PATRICK KEFFE, an Infant, by his Guardian, *vs.* MILWAUKEE & ST. PAUL RAILWAY COMPANY.

Jan. 11, 1875.

Negligence—Liability of Owner of Dangerous Machinery for Injury to Young Children.—The owner of dangerous machinery who leaves it in an open place, though on his own land, where he has reason to believe that young children will be attracted to play with it and be injured, is bound to use reasonable care to protect such children from the danger to which they are thus exposed.

The plaintiff, an infant, brought this action in the court of common pleas for Ramsey county to recover damages for injuries sustained while playing upon a turn-table of defendant. The circumstances under which plaintiff was injured are thus stated in the complaint: "That in connection

with said railroad'' (of defendant) '' defendant, before and up to the month of October, 1867, used and operated a certain turn-table, located on the lands of said defendant in said town of Northfield, which said turn-table was so constructed and arranged as to be easily turned around and made to revolve in a horizontal direction.''

After minutely describing the turn-table, the complaint proceeds : '' That said turn-table was situated in a public place, near to a passenger depot of the defendant, and within 120 feet from the residence and home of plaintiff. That said turn-table was unfastened and in no way protected, fenced, guarded or enclosed, to prevent it from being turned around at the pleasure of small children, although the same could at all times be readily locked and securely fastened.

'' That said turn-table   *   *   was in the possession and under the control of defendant, and not necessary in operating said railroad, and it was the duty of said defendant to keep said turn-table fastened or in some way protected, so that children could not readily have access thereto and revolve the same.   That the same was not so protected or fastened, and that said turn-table, when left unfastened, was very attractive to young children, and that while the same was being moved by children, and at all times when left unfastened, it was dangerous to persons upon or near it.

'' That defendant had notice of all the aforesaid facts, before and at the time the injury herein named occurred to the plaintiff.

'' That plaintiff, on September 11, 1867, was a child of tender years, without judgment or discretion, he being at that date seven years old, and that in consequence of the carelessness, negligence and improper conduct of said defendant, in not locking, enclosing, or otherwise fastening said turn-table, and by the negligence, carelessness and improper conduct of said defendant, its agents and servants, in allowing said turn-table to be and remain unfastened, insecure, and improperly put in motion, it was, at the date last aforesaid, revolved by other children, over whom the parents and

guardians of plaintiff ,had no control, and without their knowledge, and, while being so revolved, the plaintiff, being on said turn-table, had his right leg caught near the knee, between the surface of said turn-table and said abutment or wall, and between the iron rail on said turn-table and the iron rail on said abutment or wall, and said leg was thereby so bruised, broken, mangled and fractured, as to render amputation necessary.''

The complaint further alleges that the injury was caused by defendant's negligence, and without any fault or negligence on the part of the plaintiff, or his parents or guardians, etc.

The defendant having answered the complaint, and the action having been called for trial, the defendant moved for judgment on the pleadings. The motion was granted by *Hall*, J., and judgment entered accordingly, from which plaintiff appealed.

*Mead & Thompson*, for appellant.

*Bigelow, Flandrau & Clark*, for respondent, relied on the opinion of *Hall*, J., and the cases therein cited.[1]

YOUNG, J. In the elaborate opinion of the court below, which formed the basis of the argument for the defendant in this court, the case is treated as if the plaintiff was a mere trespasser, whose tender years and childish instincts were no excuse for the commission of the trespass, and who had no more right than any other trespasser to require the defendant to exercise care to protect him from receiving injury while upon its turn-table. But we are of opinion that, upon the facts stated in the complaint, the plaintiff occupied a very different position from that of a mere voluntary trespasser upon the defendant's property, and it is therefore unnecessary to consider whether the proposition advanced by the defendant's counsel, viz, that a land-owner owes no duty of care to trespassers, is not too broad a statement of a rule which is true in many instances.

[1] This opinion, too long to be inserted here, will be found in 2 Cent. Law Journal, 170.

To treat the plaintiff as a voluntary trespasser is to ignore the averments of the complaint, that the turn-table, which was situate in a public (by which we understand an open, frequented) place, was, when left unfastened, very attractive, and, when put in motion by them, was dangerous to young children, by whom it could be easily put in motion, and many of whom were in the habit of going upon it to play. The turn-table, being thus attractive, presented to the natural instincts of young children a strong temptation; and such children, following, as they must be expected to follow, those natural instincts, were thus allured into a danger whose nature and extent they, being without judgment or discretion, could neither apprehend nor appreciate, and against which they could not protect themselves. The difference between the plaintiff's position and that of a voluntary trespasser, capable of using care, consists in this, that the plaintiff was induced to come upon the defendant's turn-table by the defendant's own conduct, and that, as to him, the turn-table was a hidden danger, a trap.

While it is held that a mere licensee " must take the permission with its concomitant conditions, it may be perils," (*Hounsell* v. *Smith*, 7 C. B. (N. S.) 731; *Bolch* v. *Smith*, 7 H. & N. 836,) yet even such licensee has a right to require that the owner of the land shall not knowingly and carelessly put concealed dangers in his way. *Bolch* v. *Smith*, *per* Channell and Wilde, B B.; *Corby* v. *Hill*, 4 C. B. (N. S.) 556, *per* Willes, J.

And where one goes upon the land of another, not by mere license, but by invitation from the owner, the latter owes him a larger duty. " The general rule or principle applicable to this class of cases is that an owner or occupant is bound to keep his premises in a safe and suitable condition for those who come upon and pass over them, using due care, if he has held out any inducement, invitation or allurement, either express or implied, by which they have been led to enter thereon." *Per* Bigelow, C. J., in *Sweeny* v. *Old Colony and Newport R. Co.*, 10 Allen, 368, reviewing

many cases.   And see *Indermann* v. *Dawes*, L. R. 1 C. P. 274 ; L. R. 2 C. P. 311.

Now, what an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years.   If the defendant had left this turn-table unfastened *for the purpose* of attracting young children to play upon it, knowing the danger into which it was thus alluring them, it certainly would be no defence to an action by the plaintiff, who had been attracted upon the turn-table and injured, to say that the plaintiff was a trespasser, and that his childish instincts were no excuse for his trespass.   In *Townsend* v. *Wathen*, 9 East, 277, it was held to be unlawful for a man to tempt even his neighbor's dogs into danger, by setting traps on his own land, baited with strong-scented meat, by which the dogs were allured to come upon his land and into his traps.   In that case, Lord Ellenborough asks, " What is the difference between drawing the animal into the trap by his natural instinct, which he cannot resist, and putting him there by manual force ? "   And Grose, J., says, " A man must not set traps of this dangerous description in a situation to invite his neighbor's dogs, and, as it were, to compel them by their instinct to come into the traps."

It is true that the defendant did not leave the turn-table unfastened, *for the purpose* of injuring young children ; and if the defendant had no reason to believe that the unfastened turn-table was likely to attract and to injure young children, then the defendant would not be bound to use care to protect from injury the children that it had no good reason to suppose were in any danger.   But the complaint states that the defendant knew that the turn-table, when left unfastened, was easily revolved ; that, when left unfastened, it was very attractive, and when put in motion by them, dangerous, to young children : and knew also that many children were in the habit of going upon it to play.   The defendant therefore knew that by leaving this turn-table unfastened and unguarded, it was not merely inviting young children to come upon the turn-table, but was holding out an allure-

ment, which, acting upon the natural instincts by which such children are controlled, drew them by those instincts into a hidden danger; and having thus knowingly allured them into a place of danger, without their fault, (for it cannot blame them for not resisting the temptation it has set before them,) it was bound to use care to protect them from the danger into which they were thus led, and from which they could not be expected to protect themselves.

We agree with the defendant's counsel that a railroad company is not required to make its land a safe play-ground for children. It has the same right to maintain and use its turntable that any landowner has to use his property. It is not an insurer of the lives or limbs of young children who play upon its premises. We merely decide that when it sets before young children a temptation which it has reason to believe will lead them into danger, it must use ordinary care to protect them from harm. What would be proper care in any case must, in general, be a question for the jury, upon all the circumstances of the case.

The position we have taken is fully sustained by the following cases, some of which go much farther in imposing upon the owner of dangerous articles the duty of using care to protect from injury children who may be tempted to play near or meddle with them, than it is necessary to go in this case. *Lynch* v. *Nurdin*, 1 Q. B. 29; *Birge* v. *Gardiner*, 19 Conn. 507; *Whirley* v. *Whiteman*, 1 Head, 610.

It is true that, in the cases cited, the principal question discussed is not whether the defendant owed the plaintiff the duty of care, but whether the defendant was absolved from liability for breach of duty, by reason of the fact that the plaintiff was a trespasser, who, by his own act, contributed to the injury; and the distinction is not sharply drawn between the effect of the plaintiff's trespass, as a bar to his right to require care, and the plaintiff's contributory negligence, as a bar to his right to recover for the defendant's failure to exercise such care as it was his duty to use. But as a young child, whom the defendant knowingly tempts to

come upon his land, if anything more than a technical trespasser, is led into the commission of the trespass by the defendant himself, and thus occupies a position widely different from that of an ordinary trespasser, the fact that the courts, in the cases referred to, assumed, instead of proving, that the defendant owed to a young child, under such circumstances, a duty he would not owe to an ordinary trespasser, for whose trespass he was not in any way responsible, does not weaken the authority of those cases. And in *Railroad Co.* v. *Stout*, 17 Wall. 657, (a case in all respects similar to the present,) the distinction insisted on by counsel is taken by Mr. Justice Hunt, and the circumstance that the plaintiff was in some sense a trespasser is held not to exempt the defendant from the duty of care. In the charge of the learned circuit judge at the trial of the last named case, (reported under the title of *Stout* v. *Sioux City & Pacific R. Co.*, 2 Dillon, 294,) the elements which must concur to render the defendant liable, in a case like the present, are clearly stated.

In *Hughes* v. *Macfie*, 2 Hurlst. & Coltm. 744, and *Mangan* v. *Atterton*, L. R. 1 Exch. 239, cited by defendant's counsel, there was nothing to show that the defendants knew or had reason to apprehend that the cellar lid in the one case, or the crushing machine in the other, would be likely to attract young children into danger. It must be conceded that *Hughes* v. *Macfie* is not easily to be reconciled with *Birge* v. *Gardiner*, and that *Mangan* v. *Atterton* seems to conflict with *Lynch* v. *Nurdin;* but whether correctly decided or otherwise, they do not necessarily conflict with our decision in this case.

Much reliance is placed by defendant on *Phila. & Reading R. Co.* v. *Hummell*, 44 Penn. St. 375, and *Gillis* v. *Penn. R. Co.*, 59 Penn. St. 129. In the first of these cases, the plaintiff, a young child, was injured by coming upon the track while the cars were in motion. The only negligence charged upon the defendant was the omission to give any signal at or after the starting of the train. If the plaintiff

had been crossing the track, through one of the openings which the company had suffered the people in the neighborhood to make in the train while standing on the track, and the cars had then been run together upon him, without any warning, the case would more nearly resemble the present; but the facts, as they appear, show that the company used abundant care, and that it had no reason to suppose that the plaintiff was exposed to danger; and the decision is put upon the latter ground, although Strong, J., delivering the opinion of the court, uses language which lends some support to the defendant's contention in this case. *Gillis* v. *Penn. R. Co.* was properly decided, on the ground that the company did nothing to invite the plaintiff upon the platform, by the fall of which he was injured, and that the platform was strong enough to bear the weight of any crowd of people which the company might reasonably expect would come upon it. Neither of these cases is an authority against, while a later case in the same court, (*Kay* v. *Penn. R. Co.*, 65 Penn. St. 269,) tends strongly to support, the plaintiff's right of action in this case; and the recent case of *Pittsburg A. & M. Passenger R. Co.* v. *Caldwell*, 74 Penn. St. 421, points in the same direction.

It was not urged upon the argument that the plaintiff was guilty of contributory negligence, and we have assumed that the plaintiff exercised, as he was bound to do, such reasonable care as a child of his age and understanding was capable of using, and that there was no negligence on the part of his parents or guardians, contributing to his injury.

Judgment reversed.