ANDREW G. ERICKSON v. GREAT NORTHERN RAILWAY COMPANY.[1]

December 14, 1900.

Nos. 12,354—(92).

**Railway—Fire on Right of Way—Death of Child.**

The defendant set fire to stumps and rubbish on its right of way, and the plaintiff's intestate, a child four years of age, went to the fire, and while playing with it she was burned so that she died. This action was brought to recover damages for her death, on the ground that the right of way was not fenced, and also on the ground that the defendant left the fire unguarded. *Held:*

**Complaint—Allegations Omitted.**

1. That the complaint does not allege any facts showing that the child

[1] Reported in 84 N. W. 462.

went upon the right of way at any point which it is alleged was unfenced, or at any point which the defendant might lawfully have protected by a fence.

### Turntable Cases—Limitation of Doctrine.

2. That, as a general rule, the doctrine of Keffe v. Milwaukee & St. P. Ry. Co., 21 Minn. 207, should be limited in its application to cases of attractive and dangerous machinery and to other similar cases where the danger is latent.

### Duty of Defendant.

3. That the defendant was not bound to exercise due care to so guard the fire on its right of way that children intruding thereon could not come in dangerous contact with the fire, though induced so to do by its attractiveness.

Action in the district court for Mille Lacs county by plaintiff, as administrator of the estate of Anna Charlotte Erickson, deceased, to recover $5,000 damages on account of the death of decedent. On the trial the court, Searle, J., sustained the objection of defendant to the admission of evidence under the complaint on the ground that it did not state facts constituting a cause of action, and ordered judgment in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*H. V. Mercer*, for appellant.

*W. E. Dodge*, for respondent.

START, C. J.

The plaintiff's intestate was a child four years old, who on September 15, 1899, while playing with fire on the defendant's right of way, was so seriously burned that she died. This action was brought to recover damages for the benefit of her next of kin, on the ground that her death was due to the negligence of the defendant. On the trial the court sustained the objection of the defendant to the admission of any evidence, on the ground that the complaint did not state facts constituting a cause of action, and ordered judgment for the defendant. The plaintiff appealed from an order denying his motion for a new trial.

The complaint, after alleging that the defendant owns and operates a railroad through the village of Milaca, this state, and

that the plaintiff was the father of the child, and had been duly appointed administrator of her estate, alleged substantially these facts: On the 15th day of September, 1899, it was the duty of the defendant to keep its right of way in the village of Milaca fenced, but it unlawfully and negligently failed to fence its right of way, or any portion thereof, in such village. On the right of way north of the depot of its railway, near a public street, which was used for travel, and near several dwelling houses occupied by people having children of immature years, and on September 13, the defendant negligently caused fires to be set to three piles of stumps and rubbish then upon its right of way, and it negligently left the fires burning and unguarded until on and after September 15. At the time the fires were set, and for a long time prior thereto, its right of way at this place had not been fenced, and was then open and entirely without fence, and was located about the center of the village of Milaca. This location on its right of way had long been a common playground for the children of tender years living near by, all of which was well known to the defendant. But the plaintiff's intestate had not played thereon prior to September 15. If its right of way had been well and properly fenced at such point, the children could not and would not have gone thereon to play at any time, and the deceased child would not have gone thereon to play, as she did on September 15. The fires so set and so left burning were attractive to children of tender years, and had a strong tendency to allure them to play in and around the fires, and thus allure and entrap them into great dangers which were a menace to their lives, and which, by reason of their tender years and immature judgment, they could neither apprehend nor appreciate, all of which was well known to the defendant, whereby the deceased was induced to and did so enter upon the right of way of the defendant to play in and with the fires so set, without knowing the danger thereof, and thereby her clothing was set on fire, and she was so badly burned that she died as a result of such injuries. It was the duty of the defendant to refrain from setting such fires, unless they were properly guarded, and it was its duty to have prevented the child from going upon its right of way and playing around the fires. But it negligently set the fires and

negligently permitted them to burn without being guarded, and it thereby invited her upon its premises to play in and around the fires.

1. It is claimed by the defendant that the complaint does not allege any facts showing that the child went upon its right of way at any point which it is alleged was unfenced, or at any point which it might lawfully have protected by a fence. A majority of the justices of the court are of the opinion that this contention is correct.

It is true that the complaint alleges that it was the duty of the defendant to keep its right of way in the village of Milaca fenced, and that it negligently failed to fence any portion in such village; but it was necessary for the plaintiff to allege with reasonable certainty the place where the child entered upon the defendant's right of way, so that the defendant might allege and show, if such were the fact, that such place was its depot grounds or a public street, which public convenience required to be left open, and which it was therefore not only not bound to fence, but which it had no right to inclose. Now, for aught that appears from the allegations of the complaint, the child may have gained access to its right of way from the defendant's depot grounds or a public street. The conclusion alleged in the complaint, that, if the right of way had been fenced at the place on its right of way where the fire was left burning, the child could not and would not have gone thereon to play, cannot be construed as an allegation of fact, to the effect that she entered upon the right of way at the point where the fire was. On the contrary, it is affirmatively alleged that the place in question was "on the said right of way north of the depot of said railway near a public street which was used for travel," and was located about the center of the village.

Such being the case, and there being no direct allegation as to the point where she entered upon the premises of the defendant, if any inferences are to be indulged as to the point of entry it is not unreasonable to infer that she entered from the street. The court therefore holds that, in so far as the plaintiff's alleged cause of action depends upon the neglect of the defendant of its statutory duty to fence its right of way, the complaint does not state

a cause of action. Whether the absence of the fence, if such were the case, was the proximate cause of the child's injury, we do not decide. See Nelson v. Chicago, M. & St. P. Ry. Co., 30 Minn. 74, 14 N. W. 360.

I dissent as to the court's construction of the complaint. The question was raised for the first time on the trial of the action, and if, even argumentatively, the complaint states a cause of action, it ought to be sustained. I am of the opinion that the fair inference from all of the allegations, considered together, is that the child entered upon the right of way at the place where it was the duty of the defendant to maintain a fence, and that it did not do so.

2. The only other question necessary to be considered is: Was the defendant guilty of actionable negligence, independently of any question as to its statutory duty to fence its right of way, in setting the fires and leaving them unguarded at the place and under the circumstances alleged in the complaint. It was not, unless the allegations of the complaint in this respect show that the defendant failed in some duty which the law imposed upon it, or, in other words, show that it owed a legal duty to the class of children to which the plaintiff's intestate belonged, in the exercise of due care, to prevent them from coming in contact with the fires. The question then is, did the defendant owe a legal duty to this child and others, to exercise ordinary care by guarding the fires so that, if they intruded upon its land to play with the fires, they would not be injured thereby.

The tender and loving regard which every true man has for children and his impulse to protect them from harm, are liable, unless repressed, to lead courts to an unsound conclusion on questions of this character. It is important, then, to inquire dispassionately just what the defendant did, according to the allegations of the complaint. It set fire to rubbish on its right of way, presumably for the purpose of getting rid of it. In so doing it was executing upon its own premises, in a lawful way, necessary work. It exercised no actual force against the child, and the danger of injury from the fire was not concealed. The child was an intruder upon the defendant's land, and by her own act was injured by med-

dling with the fire. It is true, she knew no better, and was an innocent trespasser, but the innocence of the intruder in cases of this kind does not necessarily establish the legal duty of the landowner to protect him from injury. The law does not, as a general rule, impose restraints and conditions upon an owner's lawful and necessary use of his land, which is only dangerous to persons who intrude thereon. See 11 Harvard Law Review, 349, 434.

But a notable exception to this rule was declared by this court, as early as 1875, in the leading case of Keffe v. Milwaukee & St. P. Ry. Co., 21 Minn. 207, which was to the effect that the owner of dangerous machinery (a turntable), who leaves it unfastened or unguarded on his own land, where he has reason to believe that young children will be attracted to play with it, is bound to use due care to protect such children from the danger to which they are thus exposed. The basis of this decision was that the turntable, when left unfastened, was attractive to young children, and that the owner, by leaving it unguarded, was not only inviting young children to come upon it, but was holding out an allurement which, acting upon the natural instincts by which such children are controlled, drew them into a hidden danger. This exception to the rule of nonliability of landowners for injuries sustained by trespassers from the condition of their premises, or, as it is usually expressed, the "doctrine of the turntable cases," has never been extended by this court to cases like the one at bar, or to any others which upon their facts did not come strictly and fully within the Keffe case. Stendal v. Boyd, 67 Minn. 279, 69 N. W. 899. In Emerson v. Peteler, 35 Minn. 481, 29 N. W. 311, which was a case where a child five years old was killed by climbing upon a portable dump car, the court declined to apply the doctrine of the Keffe case, and stated that the basis of liability in the latter case was that the premises were such as to invite the presence of children, and the danger was not apparent, but concealed. In Twist v. Winona & St. P. R. Co., 39 Minn. 164, 39 N. W. 402, the court stated the necessity of limiting the doctrine in these words:

"To the irrepressible spirit of curiosity and intermeddling of the

82 M.—5

average boy, there is no limit to the objects which can be made attractive playthings. In the exercise of his youthful ingenuity, he can make a plaything out of almost anything, and then so use it as to expose himself to danger. If all this is to be charged to natural childish instincts, and the owners of property are to be required to anticipate and guard against it, the result would be that it would be unsafe for a man to own property, and the duty of the protection of children would be charged upon every member of the community except the parents or the children themselves. This court itself, if it has not modified the Keffe case, has at least indicated that the doctrine which it announces is not to be given any such extreme and unlimited application."

In Haesley v. Winona & St. P. R. Co., 46 Minn. 233, 48 N. W. 1033, the court held that a railroad company was not guilty of negligence, as to young children, by leaving cars on a gravity track, with the brakes set, which were loosened by them, whereby one of their number was killed. Again, in the case of Ratte v. Dawson, 50 Minn. 450, 52 N. W. 965, it was held that a landowner was not liable in damages for the death of a child three years old, caused by the caving of an unguarded embankment on his premises, made by excavations for sand. In Stendal v. Boyd, 73 Minn. 53, 75 N. W. 735, the court refused to extend the doctrine of the turntable case so as to include an unguarded pond caused by the excavation in a stone quarry which had been abandoned. The court in that case said:

"The liability of the landowner to children who are induced to come upon his premises by reason of attractive and dangerous machinery thereon was carefully limited in the original decision, and the limitations have been enforced by the subsequent decisions of this court. * * * The doctrine of the turntable cases is an exception to the rule of nonliability of a landowner for accidents from visible causes to trespassers on his premises. If the exception is to be extended to this case, then the rule of nonliability as to trespassers must be abrogated as to children, and every owner of property must, at his peril, make his premises childproof. * * * It would seem that there is no middle ground, and that the doctrine of the turntable cases ought to be limited to cases of attractive and dangerous machinery."

The suggested limitation necessarily had no reference to cases where the danger was not open, but concealed. This court also refused to extend the doctrine to a case where a child was injured

by falling from an unguarded retaining wall seven and one-half feet high. Kayser v. Lindell, 73 Minn. 123, 75 N. W. 1038.

It is not practicable to lay down any absolute rule as to the limitations of the doctrine. The manifest trend, however, of all the decisions of this court is to limit its application to attractive and dangerous machinery, and to other similar cases where the danger is latent. We are not prepared to say that cases may not arise outside of this classification to which the doctrine ought to be extended, but we do hold that as a general rule the doctrine of the turntable cases must be limited to cases of attractive and dangerous machinery, and to other similar cases where the danger is latent. This rule may not be strictly logical, but it is a necessary one, unless landowners are to be made insurers of the safety of children when trespassing upon their premises. It necessarily follows that this case falls within the limitation, and that the defendant was not bound to exercise ordinary care to so guard the fire on its right of way that children intruding thereon could not come in dangerous contact with the fire, though induced so to do by its attractiveness. Therefore the complaint does not state a cause of action.

Order affirmed.

LEWIS, J. (dissenting).

The complaint states that at the place where the fires were set the right of way was not fenced; that said location was on the right of way, and had long been a common playground for young children living in the vicinity; and that, if the said right of way had been properly fenced at the said point, the deceased would not have gone thereon to play at the time of the accident. These allegations, together with the statement that the child entered upon the premises and played around the fire, being attracted thereto, are sufficient to constitute a declaration that she went to the fire at a point where the right of way was not fenced. Upon that point I dissent from the views of the majority of the court.