CHARLES MATTSON v. MINNESOTA & NORTH WISCONSIN RAILROAD COMPANY.[1]

July 21, 1905.

Nos. 14,416—(166).

**Care of Explosives.**

The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost care must be exercised, respecting the care and custody of such instrumentalities, to guard against injury to others.

**Same.**

The degree of care must be commensurate with the dangerous nature of the article, and is greater and more exacting as respects young children.

**Negligence.**

Defendant left exposed and unguarded on its premises a large quantity of dynamite, which was found by plaintiff's children, an explosion of

[1] Reported in 104 N. W. 443.

which by them resulted in the death of one and the permanent injury of the other. It is held that the evidence is sufficient to justify the jury in finding (1) that the dynamite was obtained from the premises of defendant, (2) that defendant negligently permitted it to remain thereon exposed and unguarded, and (3) that the children were not guilty of contributory negligence.

**Contributory Negligence.**

In an action brought by a child non sui juris for injuries to his person caused by the negligence of defendant, the contributory negligence of his parent or guardian will not be imputed to him. Fitzgerald v. St. Paul, M. & M. Ry. Co., 29 Minn. 336, overruled.

**Negligence of Parent.**

The negligence of the parent will bar an action by him for loss of services, but not an action by the infant.

Action in the district court for Carlton county under section 5164, G. S. 1894, to recover $30,000 for personal injuries sustained by plaintiff's minor son. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of plaintiff for $7,000. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Davis & Hollister,* for appellant.

*Jno. Jenswold, Jr.,* for respondent.

BROWN, J.

This action was brought under the provisions of § 5164, G. S. 1894, to recover for injuries to plaintiff's minor son, caused, as alleged in the complaint, by the negligence of defendant. Plaintiff had a verdict in the court below, and defendant appealed from an order denying its alternative motion for judgment notwithstanding the verdict or for a new trial.

It appears without dispute that plaintiff's two sons—Hjalmar, for whose benefit this action is prosecuted, and a younger brother—both under the age of nine years, obtained from some source a stick of dynamite, which they exploded, instantly killing the younger of the two, and permanently maiming and injuring Hjalmar. Two principal questions of fact were presented for the consideration of the jury, viz: (1) Whether the dynamite resulting in the injury complained of was obtained from the premises of defendant; and (2) if so, whether

defendant was guilty of negligence in permitting it to remain on or about its premises unguarded and unprotected. It was claimed by plaintiff that the dynamite was obtained from defendant's premises, and that defendant was guilty of actionable negligence in permitting it to remain in an exposed place thereon. This was controverted by defendant, and it is urged in this court that the evidence is wholly insufficient to justify the verdict of the jury upon either question.

The evidence tends to show that, some time prior to the date of the occurrence complained of, defendant was engaged in constructing a roadbed in the vicinity of the farm owned and occupied by plaintiff and his family, and that in and about this work it used dynamite in removing stumps of trees and blasting rock. It had finished its work in this particular, and the employees engaged therein had gone elsewhere; but all the dynamite belonging to defendant, which had been taken to this place for use, was not removed at the time the work was completed, at least the evidence is sufficient to justify the jury in so finding. The evidence shows that one box of dynamite was deposited under a pile of ties near the railroad track, and another was discovered, by plaintiff's boys and a neighbor's boy of about their age, under an old mattress, which had evidently been used by defendant's employees during the time they were engaged in the work in that locality. The explosion, which resulted in the death of one of the boys and the injury of the other, occurred not far from the railroad right of way, and near at hand was found on the day following a pile of about sixteen sticks of dynamite laid up against the stump of a tree. Just how this came there the evidence does not disclose. It was not upon defendant's premises, but about three hundred feet therefrom. Considerable blasting was done by defendant's employees, which was naturally attractive to the boys of the neighborhood, and they were to some extent loitering about the railroad right of way while the work was in progress. They had been warned away by the railroad employees, and plaintiff, their father, had been told to keep them away from the railroad work. On the day prior to the accident the boys discovered the box of dynamite under the mattress, and called the attention of one Nester, who was in the employ of defendant, to the fact. Nester took the box, opened it in the presence of the boys, and, upon discovering that it contained dynamite, stated that he would take it down by the railroad track, a

short distance away, and remove it when he quit work at night. The boys asked him for some of the dynamite, but he refused, saying it was a dangerous article to handle and that they must let it alone. They followed him to the railroad track and saw him place it under the ties, where it was claimed the other box was stored, and he must have known of their presence and that they knew where he placed it. The ties were piled along the side and at right angles with the track, projecting over the embankment, leaving a space underneath the outer ends and the receding bank, in which the dynamite was placed. The boys lingered at the pile of ties until after Nester had returned to his work, when they went to the box, removed the cover, it not being nailed down, and took out a stick of dynamite and carried it home with them. On their arrival home, the father discovered the dynamite, took it from them, and concealed it in his barn. The day following the boys obtained dynamite from some source, as already stated, and its explosion resulted disastrously to them.

We have considered the evidence with care, and are satisfied that the jury was fully justified in finding that the boys obtained the dynamite from the premises of the railway company; at least, the evidence is not so clearly or conclusively the other way as to justify the court in disagreeing with the jury. While there was evidence that dynamite had previously been used, not only by the railway company, but by plaintiff and other farmers in the vicinity, as an agency in removing stumps in clearing land, the fair inference from all the facts shown, which the jury had the right to draw, points to the fact that the dynamite which did the damage complained of belonged to defendant. Plaintiff testified that he had no dynamite at his home at this time. It appeared on the trial, however, that sixty or seventy sticks were found in one of his buildings under a barrel the day following the accident; but how this came there was not made clear by the evidence, and it was for the jury to say whether the boys took from that source, conceding that it was there on the day of the accident, or from defendant's supply at the pile of ties. The evidence is conclusive that they knew of the location of the company's dynamite (they were present when Nester placed the box under the tie pile), but it does not appear that they knew of that in the building owned by plaintiff. Plaintiff was not at home on the day in question, and if the boys were looking

for dynamite for the purpose of pleasure and amusement, and knew that it was within their reach at home, they naturally would not have been searching defendant's premises for it. Upon the whole record, therefore, we conclude that the verdict to the effect that the dynamite was taken .from the premises of defendant is sustained. It remains to consider whether the evidence makes a case of actionable negligence against defendant respecting the care and custody of its dynamite, and we pass to that question without further discussion of the evidence upon this feature of the case.

Plaintiff relies for recovery upon the doctrine of the "turntable cases," while it is strenuously contended by defendant's counsel that the facts do not bring the case within that principle of law, that it conclusively appears that defendant took reasonable care of its dynamite, and that, conceding for the purposes of argument that the dynamite resulting in the injury to the boys was taken from its premises, they were trespassers thereon, and no recovery can be had in this action.

The rule governing cases of this kind, stated in substance, is that one who maintains dangerous instrumentalities or appliances on his premises of a character likely to attract children in play, or permits dangerous conditions to remain thereon with the knowledge that children are in the habit of resorting thereto for amusement, is liable to a child non sui juris who is injured therefrom, even though a trespasser. The rule is intended for the protection of children of tender years, who from immaturity are incapable of exercising a proper degree of care for their own protection. It was first applied in this state in the case of Keffe v. Milwaukee & St. Paul Ry. Co.. 21 Minn. 207, where it was said that the owner of dangerous machinery, who leaves it in an open place, though on his own land, where he has reason to believe that young children will be attracted to it for purposes of play, is bound to exercise reasonable care for the protection of such children. That case has been followed, and the principle therein laid down applied, in several subsequent cases in this court, and by the courts of last resort in other states; and though in Twist v. Winona & St. Peter R. Co., 39 Minn. 164, 39 N. W. 402, it was said that the rule should not be extended, it has been steadily adhered to in substance in all cases where the facts made it applicable.

95 M.—31

It is urged by defendant that the doctrine does not apply to the case at bar. In this we cannot concur. The dangerous instrumentality here involved (dynamite) is an extremely hazardous article in the hands of mature persons, and a hundredfold more so in the hands of young children. The degree of care required of persons having the possession and control of dangerous explosives, such as firearms or dynamite, is of the highest. The utmost caution must be used in their care and custody, to the end that harm may not come to others from coming in contact with them. The degree of care must be commensurate with the dangerous character of the article (Keasbey, Electric Wires [2d Ed.] 269, 270), and is greater and more exacting as respects young children. As to such, the care required to be exercised is measured by the maturity and capacity of the child. Railroad Co. v. Stout, 17 Wall. 657. What would constitute reasonable care with respect to adults might be gross negligence as applied to a young child. 7 Am. & Eng. Enc. (2d Ed.) 441, and cases cited. The case at bar, within these rules, is even stronger than the so-called "turntable cases."

There is nothing so attractive to young boys as articles of an explosive nature, and the greater the volume of sound that may be produced therefrom the greater the attraction. As compared with an ordinary turntable, dynamite is vastly more attractive, and far more dangerous. Young children are incapable of comprehending the dangers in handling or exploding the same, and their natural instincts urge them into experiments with it whenever it comes within their reach. In view of these considerations, the rule of law imposed upon him who possesses such dangerous articles should be more exacting than in the case of a turntable; and, applying the rule to the facts before us, it is clear that the jury was justified in finding negligence upon the part of defendant. It failed to take proper care of dynamite brought into this vicinity, and left it exposed upon the premises where children had, to the knowledge of its servants, been in the habit of loitering and amusing themselves.

An examination of the books discloses cases somewhat similar to that at bar. In Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, it appeared that defendant kept on his premises, over which the injured person, a boy of tender years, was in the habit of passing, in an exposed place, certain dangerous explosives. The boy discovered the same, took one

of them, and exploded it, with serious injury to his person.   An action for injuries to the boy, based on the ground that the defendant was guilty of negligence in leaving the explosives upon his premises in an unguarded and unconcealed place, was sustained.   In the course of the opinion in that case Judge Cooley made use of language so pertinent to the facts of this case that we quote it.   He said:

"The moving about of the children upon the land, where they were at liberty to go, while they were not actually employed, was as much an incident to their being there as is the loitering or playing by children outside the traveled part of the highway as they go upon it to school or upon errands.   Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards them must calculate upon this, and take precautions accordingly.   If they leave exposed to the observation of children anything which would be tempting to them, and which they in their immature judgment might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken.   *   *   *   In this case a shed in which a dangerous explosive was stored was left only partly inclosed, and its structure and location were such as naturally to invite the entrance of children, either for play or for shelter from sun and rain.   Children were rightfully near it, there was nothing in its appearance to warn them off, it was not fastened against their entrance, and there was nothing about it to indicate that they would do injury or be injured by going there. The box containing the explosives seems to have had more the appearance of a box discarded as of no value, and with worthless refuse in it, than of a box which it was of the very highest importance should be guarded with sedulous care.   It was never firmly fastened, and the only warning upon it was the word written upon a top board, which was not always kept on.   A man of ordinary prudence, if told that so dangerous an article was so carelessly stored, might well have deemed the statement incredible.   We cannot, under these circumstances, say that the plaintiff's father was chargeable with fault in not suspecting the danger and warning his children away from it, or that the child himself was blameworthy in acting upon his childish instincts and propensities, which combined with the negligence of defendant's servant to bring the danger upon him."

In Nelson v. McLellan, 31 Wash. 208, 71 Pac. 747, it appeared that defendant placed several sticks of dynamite in a box upon a vacant lot in the vicinity where he was engaged in a public improvement under contract with the municipal authorities, and where boys were in the habit of playing, without securely covering the same, and he was held liable for injuries to plaintiff, a boy of tender years, who found the same and exploded one of the sticks.

In the case of Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, it appeared that the railway company had been operating a coal mine near one of its stations, and was in the habit of depositing the slack upon an open lot between the mine and the station in such quantities that it took fire from the spontaneous combustion and remained in that condition, constantly burning. Plaintiff, a young boy, visited the coal mine in company with another boy, and became frightened by threats of other boys who preceded them to the mine, and in an effort to escape from them fell into the burning slack and was severely injured. The company was held guilty of negligence in not properly guarding the pit of slack, and that, under the circumstances disclosed, the plaintiff was not a trespasser. It appeared that people in general visited the mine at pleasure, including boys of the age of plaintiff. There was nothing particularly attractive about the mine, either to adults or children, and certainly nothing attractive in the burning pit of slack.

The court in that case cited and commented favorably upon the leading English case of Lynch v. Nurdin, 1 Q. B. 29. In that case it appeared that defendant's servant left the horse and cart he was driving for his master unhitched in the street and unattended, while he entered a house on some business errand. Plaintiff, a boy of seven years, and other children, discovering the horse unhitched, began playing about the cart. Some of the boys got into the cart, while another led the horse down the street. Plaintiff, in attempting to get out of the cart, fell between the wheels; the cart passing over and breaking one of his legs. Defendant, the master, was held liable for the neglect of its servant in leaving the horse in the manner stated, and that his responsibility was not overcome by the fact that the boys were trespassers. That is an extreme case, and has not been followed to its full

extent by the courts of this country. It is only referred to as illustrating the strictness of the rule in this class of cases.

In Euting v. Chicago, 116 Wis. 13, 92 N. W. 358, it appeared that an employee of defendant placed a torpedo upon the track, and ran his engine over and exploded it, injuring a boy who was standing near. The act was not in the discharge of the fireman's duties, but, on the contrary, outside his employment, being an attempt to assist at a Fourth of July celebration then in progress at the place. The company was held liable.

In Railway Co. v. Shields, 47 Oh. St. 387, 24 N. E. 658, it appeared that the conductor of a freight train, in a spirit of jollity and mirth, and to have some sport with certain lady passengers on his train, with whom he was acquainted, placed a torpedo in front of the caboose at a point on the road where people were in the habit of passing frequently, expecting that when the car passed over it an explosion would occur and frighten them. No explosion occurred, however, and later in the day the torpedo was found by some boys, who exploded it, injuring plaintiff. The company was held liable, and stress was laid in the opinion on the fact that the railway company had not exercised proper care respecting the custody of the torpedo, and the point that the act of the conductor in placing the torpedo on the track was not in the line of his duties was held not well taken.

In Edgington v. Burlington, 116 Iowa, 410, 90 N. W. 95, will be found an elaborate view of all the leading cases on this subject. That was a "turntable case"; but the rules and principles of law applicable to the protection of children from dangerous instrumentalities on the premises of another are carefully reviewed and considered.

The case at bar is wholly unlike Stendal v. Boyd, 73 Minn. 53, 75 N. W. 735, a case where it was sought to hold the owners of the premises liable for the death of a boy who was drowned in an artificial pond located thereon. Unlike dynamite, there is nothing intrinsically dangerous about an ordinary pond of water, natural or artificial, and the court there very properly held that the doctrine of the "turntable cases" did not apply.

Nor is the case at bar like Haesley v. Winona & St. Peter R. Co., 46 Minn. 233, 48 N. W. 1023. In that case cars were left by servants of the railway company in one of its yards, and plaintiff and other boys

released the brakes, and the cars ran down a grade, resulting in the injury of plaintiff. It was held that the company was not liable, and that it performed its full duty by setting the brakes on the cars, which the evidence disclosed was done. Whether defendant· in the case at bar performed its full duty in the matter of caring for the dynamite injuring plaintiff was a question of fact for the jury. The other Minnesota cases cited and relied upon by appellant, where the doctrine or the "turntable cases" has been held not applicable, are clearly distinguishable. It is unnecessary to extend this opinion by making special reference to each.

In view of the authorities cited and the principles laid down by them, we have no difficulty in holding that the doctrine of the "turntable cases" applies to the case at bar, and that defendant is liable. That defendant's employees left exposed upon its premises a large quantity of the dynamite is clear; and whether it was responsible for the act of Nester, in failing to properly guard and conceal the quantity known by him to have been found by the boys, is not of controlling importance. The fact remains that those who were intrusted with its custody, the employees engaged in the work in which it was used, failed to exercise due care respecting it, with the knowledge that children were in the habit of loitering about the railroad premises; and within the principle of the cases cited defendant is responsible for this neglect.

It is also urged that plaintiff, the injured boy's father, was guilty of contributory negligence; that he knew that his boys had been frequenting the railroad premises, had obtained dynamite therefrom, and wholly neglected to take adequate steps to keep them away, and failed to inform defendant that they had obtained dynamite therefrom; hence that he was guilty of such negligence as will bar recovery in this action, brought for the benefit of the injured boy. It may be conceded that plaintiff was guilty of contributory negligence as contended by defendant; but as his negligence can defeat a recovery only by imputing it to the injured son, as held in Fitzgerald v. St. Paul, M. & M. Ry. Co., 29 Minn. 336, 13 N. W. 168, we take this occasion, the question being squarely presented by the facts, to reconsider the rule announced in that case.

It was there held that negligence of a parent having the care of an infant non sui juris, which contributes with the negligence of a third

person to produce injury to the child, bars recovery by the latter.  The decision was by a majority of the court, and was based upon what was regarded sound principle.  There has been much discussion of this question by text-writers and judges, and the courts have not agreed thereon.  A number of the states have adopted the reasoning of the leading New York case of Hartfield v. Roper, 21 Wend. 614, and held to the doctrine as announced by this court in the Fitzgerald case; while other states, following the lead of the Supreme Court of Vermont in Robinson v. Cone, 22 Vt. 213, utterly repudiate the doctrine as unsound in principle and at variance with the general rules of law applicable to the rights of infants.  It is said in 4 Current Law, 778, that by weight of modern authority negligence of a parent or custodian is not imputable to a child non sui juris, so as to bar an action brought on its behalf, and the authorities in support of the statement are there cited.

Bishop, in his work on Non-contract Law (Section 582), says that the doctrine of imputed negligence, whereby an infant loses his suit, "not only where he is negligent himself, but where his father, grandmother, or mother's maid is negligent, is as flatly in conflict with the established system of the common law as anything possible to be suggested."  The law, says the writer, never took away a child's property because his father was poor or shiftless, or a scoundrel, or because anybody who could be made to respond to a suit for damages was a negligent custodian of it.  But by this doctrine, "after a child has suffered damages, which, confessedly, are as much his own as an estate conferred upon him by gift, and which he is entitled to obtain out of any one of several defendants who may have contributed to them, he cannot have them if his father, grandmother, or mother's maid happens to be the one making a contribution."  The writer concludes that the "law's established reasons" do not to any extent sustain the doctrine.

The rule is criticised and declared obnoxious to sound principles by Beach in his work on Contributory Negligence (3d Ed.) § 127, et seq., and by Judge Jaggard in his work on Torts. 2 Jaggard, Torts, 985.  These criticisms are sustained by a vast majority of the courts, state and federal.  The authorities will be found cited in the works referred to and in 7 Am. & Eng. Enc. Law (2d Ed.) 448, et seq.  See also Berry v. Lake Erie (C. C.) 70 Fed. 679, Battishill v. Humphrey,

64 Mich. 514, 31 N. W. 894, and Westbrook v. Mobile, 66 Miss. 560, 6 South. 321, where the subject is ably discussed and the authorities reviewed.

We have given the matter very serious consideration, with the result that in our opinion the doctrine of the Fitzgerald case is unsound, at variance with elementary principles of the law respecting the rights of infants, and should be overruled. The right of an infant to damages for injuries to his person caused by the wrongful act of others is a property right, and entitled to the same protection in the courts as is accorded other property held or owned by him. He is entitled to the protection of the law equally with persons who have attained their majority, and to refuse him relief on the ground of his parents' indifference or negligence would be to deny it to him. To impute to him negligence of others is harsh in the extreme, whether the negligence so imputed be that of his parents, their servants, or his guardian. He is a citizen within the meaning of the law of the land, and entitled to such rights and privileges as are appropriate to his class, and to the equal protection of the law. Though the Fitzgerald case has remained undisturbed many years as the law of this state, the rule there laid down is not a rule of property, no rights will be affected by a departure from it, for no one has a vested right to negligently cause injury to another, and we have no misgiving as to consequences in setting the court right on this important question, and placing it in line with the weight of modern thought. If it had become a rule of property, we would not disturb it; but not being such, and being clearly wrong in principle and contrary to sound policy, it should not be longer adhered to. Ganser v. Ganser, 83 Minn. 199, 86 N. W. 18.

The other assignments of error require no extended mention. The evidence tending to show that defendant permitted black powder and other explosive matters to remain around and about its premises in the vicinity in question was proper upon the question of the degree of care actually exercised by its servants respecting the custody, care, and control of the dynamite. The point made that the court erred in refusing the sixteenth request, to the effect that, if the jury were unable to determine from the evidence whether the boys obtained the dynamite from the premises of the railway company or from plaintiff's premises,

plaintiff could not recover, is not well taken. The court fully covered this request in its general charge.

Nor was there any error in the instructions of the court upon the question of damages. It is urged in this connection that under the charge of the court the jury was permitted to award plaintiff damages for the loss of services of his son; but a careful reading of the instructions does not sustain this view. If counsel were apprehensive that the jury might gain that impression from the charge, it was their duty to call the attention of the court to the matter, that the error, if any was made, could be corrected. It is clear that the court did not intend to so charge the jury. The rule of Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754, applies. The damages awarded by the jury are quite large, but the same amount was sustained by the Supreme Court of the United States in the case of Union Pacific Ry. Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619.

The question of the contributory negligence of the boys was one of fact, and we would not be justified, on the facts disclosed, in overruling the conclusion reached by the jury on that subject.

Order affirmed.