## O. J. DAHL v. VALLEY DREDGING COMPANY.[1]

February 27, 1914.

Nos. 18,431—(253).

**Trespasser — duty of owner.**

1. It is the general rule that a trespasser takes his chances and must look out for himself, and that no duty rests upon the owner so to care for his property that a wrongful intermeddler shall not be exposed to danger.

**Same.**

2. It is the duty of one who invites others to use his property to exercise ordinary care to keep it in such condition that they may do so with reasonable safety.

**Rule of turntable cases.**

3. The keeping of dangerous and attractive machinery, where children may be expected to come to play, exposes them to a temptation which, as to those who lack sufficient mental capacity to be conscious trespassers, is deemed equivalent to an implied invitation to play with it, and imposes a duty to use reasonable care to protect them from injury; but this rule applies only as to dangerous machinery and appliances naturally attractive to children.

**Same — explosive substance.**

4. Where articles in such common use as gasolene, naphtha, and kerosene are kept in a proper receptacle, at a place where it is proper for them to be, and where there is no reason to anticipate that they will be meddled with, the mere failure so to guard them that trespassing children cannot get pos-

[1] Reported in 145 N. W. 796.

---

Note.—The doctrine of attractive nuisance is considered in an extensive note in 19 L.R.A.(N.S.) 1094. And as to the duty of a property owner to trespassing child, generally, see note in 32 L.R.A.(N.S.) 559.

session of them does not, in itself, constitute actionable negligence under either the doctrine of the "turntable cases," or the rule applying to explosives.

Action in the district court for Marshall county by the father of Steinar Dahl, a minor, to recover $2,525 for personal injury received by the minor from an explosion of gasolene upon defendant's dredging machine. The answer denied any negligence on its part and alleged that the negligence of the minor or that of his parents in permitting him to be upon the premises of defendant contributed to cause the injury. The case was tried before Grindeland, J., who denied defendant's motion for a directed verdict in its favor, and a jury which returned a verdict for $650 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and judgment ordered in favor of defendant.

*Morton Barrows* and *Julius J. Olson,* for appellant.

*O. A. Naplin, Charles Loring* and *G. A. Youngquist,* for respondent.

Taylor, C.

In the summer of 1912, defendant was engaged in constructing a drainage ditch in the county of Marshall, and performed the work with a dredging machine operated by a gasolene engine in which naphtha was used instead of gasolene. As naphtha is less volatile than gasolene it was necessary to "prime" the engine when first starting it. For this purpose the engineer kept some naphtha in a quart coffee pot, and when necessary to start the engine, poured a small quantity into the priming hole, and then inserted a match which he lighted by means of a small strip of iron, and thereby produced a sufficient explosion to start the engine. The pot containing the naphtha, together with similar pots containing different kinds of lubricating oil, was kept upon a shelf in the engine room.

Plaintiff, who resided near the ditch, had three boys, Oscar aged 13, Inar aged 9, and Steinar aged 7, who frequently played on and about the dredge, although repeatedly forbidden by their parents to do so. They had seen the manner in which the engineer started the

engine, but knew nothing about naphtha or its properties.  On the day of the accident, which was Sunday, plaintiff and his wife went berrying and left the boys at home.  The dredge did not operate on Sunday, but the crew were cleaning it.  At the time of the accident they had gone to dinner and none of them were present.  The boys went upon the dredge.  After playing about it for some time, Oscar, the oldest, procured a match from a box in the engine room and found some waste which he put upon a plank at the front end of the dredge and set on fire.  He then sent Inar, the second boy, for the can of naphtha.  Inar brought it and gave it to Oscar.  With the three standing about the burning or smouldering waste, Oscar poured some naphtha upon it which instantly blazed up, set the naphtha in the pot on fire, and burned the boys badly.  Plaintiff brought this action on behalf of the youngest boy, Steinar, to recover damages for the injuries so sustained.  The verdict was for the plaintiff.  An alternative motion for judgment notwithstanding the verdict or for a new trial was made and denied and defendant appealed.

It is a general rule that a trespasser takes his chances and must look out for himself; and that no duty rests upon the owner to keep his property in such condition or so guarded that a wrongful intermeddler shall not be exposed to danger.  But if the owner invite others upon his premises, or to make use of his property, the law imposes upon him the duty of exercising ordinary care to keep the premises or the property in such condition that those who act upon his invitation may do so with reasonable safety.  The owner of dangerous machinery located where he has reason to expect children to come for purposes of amusement, and of a character which he ought to anticipate would attract them into playing with or about it, exposes them to such temptation that, as to those children who lack sufficient mental capacity to be conscious trespassers, it is deemed equivalent to an implied invitation to amuse themselves, and imposes upon such owner the duty to use reasonable care to protect them from injury.

This rule, commonly known as the doctrine of the "turntable cases," is an exception to the general rule that a property-owner owes no duty to a trespasser except to avoid wanton injury to him; and is recognized and approved by the majority of courts but is disapproved

by several. See Wheeling & L. E. R. Co. v. Harvey, 77 Oh. St. 235, 83 N. E. 66, 19 L.R.A.(N.S.) 113, 122 Am. St. 503, 11 Ann. Cas. 981, and Thompson v. Baltimore & O. Ry. Co., [218 Pa. St. 444, 67 Atl. 768, 19 L.R.A.(N.S.) 1162] and cases cited in note appended thereto in 11 Ann. Cas. 894. The rule was first adopted in this state in Keffe v. Milwaukee & St. Paul Ry. Co. 21 Minn. 207, 18 Am. Rep. 393, where a young child was injured in a turntable, and has frequently been recognized and applied in subsequent cases. O'Malley v. St. Paul, M. & M. Ry. Co. 43 Minn. 289, 45 N. W. 440; Gunderson v. Northwestern Ele. Co. 47 Minn. 161, 49 N. W. 694; Decker v. Itasca Paper Co. 111 Minn. 439, 440, 127 N. W. 183; Berg v. B. B. Fuel Co. 122 Minn. 323, 142 N. W. 321.

This court has always confined the doctrine within narrow limits and has refused to extend it to cases not involving attractive and dangerous machinery or attractive and dangerous explosives. Emerson v. Peteler, 35 Minn. 481, 29 N. W. 311, 59 Am. Rep. 337; Twist v. Winona & St. Peter R. Co. 39 Minn. 164, 39 N. W. 402, 12 Am. St. 626; Haesley v. Winona & St. Peter R. Co. 46 Minn. 233, 48 N. W. 1023, 24 Am. St. 220; Ratte v. Dawson, 50 Minn. 450, 52 N. W. 965; Stendal v. Boyd, 73 Minn. 53, 75 N. W. 735, 42 L.R.A. 288, 72 Am. Rep. 597; Kayser v. Lindell, 73 Minn. 123, 75 N. W. 1038; Erickson v. Great Northern Ry. Co. 82 Minn. 60, 84 N. W. 462, 51 L.R.A. 645, 83 Am. St. 410; Ellington v. Great Northern Ry. Co. 96 Minn. 176, 104 N. W. 827.

It is clear that the case at bar does not come within the rule of the "turntable cases" proper, as that rule is recognized and applied in this state.

The rule in respect to dangerous explosives requires a vigilance in safeguarding them commensurate to the character of the explosive and the danger to be apprehended therefrom, and has been applied and elucidated in the following cases: Clarkin v. Biwabik-Bessemer Co. 65 Minn. 483, 67 N. W. 1020; Mattson v. Minnesota & N. W. R. Co. 95 Minn. 477, 104 N. W. 443, 70 L.R.A. 503, 111 Am. St. 483, 5 Ann. Cas. 498; Anderson v. Settergren, 100 Minn. 294, 111 N. W. 279; Anderson v. Smith, 104 Minn. 40, 115 N. W. 743; Froeberg v. Smith, 106 Minn. 72, 118 N. W. 57; Vills v. City of Clo-

quet, 119 Minn. 277, 138 N. W. 33, 42 L.R.A.(N.S.) 840; Juntti
v. Oliver Iron Mining Co. 119 Minn. 518, 138 N. W. 673; Eckart
v. Kiel, 123 Minn. 114, 143 N. W. 122.

Gasolene, naphtha and kerosene are products of petroleum in com-
mon use. They are all of the same general character but differ in
volatility. Gasolene gives off gas at a comparatively low temperature,
naphtha at a higher temperature, and kerosene at a still higher. This
gas under certain conditions is highly explosive when brought in con-
tact with fire. All three are highly inflammable but only the gas,
and not the liquid, is explosive. In the present case there was no
explosion. When the stream of naphtha came in contact with the fire,
it broke into a flame which extended to the naphtha in the pot; but
it did not explode; and Oscar threw the blazing pot into the ditch.
The pot of naphtha and other similar pots containing lubricating oils
were kept upon a shelf back of the engine to have them convenient
for use as occasion required. This was unquestionably a proper place
for them, at least while the engine was in operation and the engineer
present. When the crew left the dredge on Sunday to go to dinner,
did ordinary care require them to remove the naphtha and place it
where trespassing children could not obtain possession of it? It
does not appear that anyone had ever previously meddled with these
pots, or that defendant had any reason to anticipate that these chil-
dren or anyone else might do so. Naphtha produces an explosive gas
more readily than kerosene, but less readily than gasolene. All three
are so inflammable that, if Oscar had poured either of the others up-
on the fire, it would doubtless have blazed up in the same manner
and have produced the same result as the naphtha. It is a matter of
common knowledge that both kerosene and gasolene are usually kept
in the majority of households, and are seldom so guarded that chil-
dren cannot get possession of them, if they should attempt to do so.
These liquids are not naturally attractive to children and are danger-
ous only when brought in contact with fire.

The same degree of care cannot be expected in the case of an ar-
ticle unattractive in itself, not inherently dangerous, and which is
in such common use that people, generally, keep it about their prem-
ises and are familiar with it, as in the case of an article attractive

in itself, or inherently dangerous, or so uncommon that people, generally, neither have nor use it. If defendant was negligent under the facts of this case, every householder, who permits a can of gasolene or kerosene to remain where a neighbor's child has access to it, is likewise negligent. To hold that leaving this can of naphtha in its usual place on the shelf behind the engine, while the crew were at dinner, is sufficient to establish negligence, would extend the rule so that the greater number of the householders of the state would be liable to a similar charge.

The care taken by people generally to prevent injury from articles in common use is a proper guide for the courts in determining what constitutes due care in respect to such articles. The law does not exact a degree of care in guarding any article, which will make the great majority of the possessors of that article chargeable with habitual or continuous negligence. Due care in any case is the care usually exercised by men of ordinary prudence in like cases and under like circumstances. This is the standard by which the conduct of those charged with negligence is measured. The exception to the rule applying to trespassers cannot be extended to such length that the mere failure so to guard articles in common use that trespassing children cannot get possession of them is, in itself, actionable negligence. Such articles as gasolene, naphtha, and kerosene may unquestionably be so negligently kept as to give rise to a cause of action. But when they are kept in a proper receptacle, at a place where it is proper for them to be, and where there is no reason to anticipate that they will be meddled with, the failure so to guard them that trespassing children cannot get possession of them is not, alone, and in itself, sufficient to create a liability.

We are of opinion that the evidence is not sufficient to sustain the verdict, and the order appealed from is reversed and judgment directed for defendant.