## J. C. HINDAL v. KAHLER CORPORATION.[1]

April 9, 1926.

No. 25,154.

**Care required of persons controlling electric wires as respects young children.**

1. The degree of care required of persons having possession and control of dangerous instrumentalities, such as electric wires, is of the highest. The care must be commensurate with the nature, character, manner and use of the instrumentality, and is more exacting as respects young children.

**Questions for jury.**

2. Under the evidence in this case, both the negligence of the defendant and contributory negligence of the injured boy were for the jury.

[1]Reported in 208 N. W. 524.

Electricity, 20 C. J. p. 341 n. 73; p. 342 n. 74; p. 343 n. 82; p. 390 n. 75; p. 392 n. 92.

Negligence, 29 Cyc. p. 429 n. 89; p. 430 n. 91; p. 535 n. 50; p. 537 n. 58, 62.

See 9 R. C. L. p. 1200; 2 R. C. L. Supp. 942; 4 R. C. L. Supp. p. 641.

Action in the district court for Dodge county by the father of a minor son to recover damages for personal injuries. The case was tried before Callaghan, J., and a jury which returned a verdict in favor of plaintiff. Defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial. Affirmed.

*Campbell & Burness*, for appellant.

*H. J. Edison*, for respondent.

QUINN, J.

Action by a father, on behalf of his minor son, to recover for personal injuries (electric burns) alleged to have been sustained by the son on December 10, 1924, while in defendant's hospital as a patient. There was a verdict for $1,000 in favor of the plaintiff. From an order denying its alternative motion for judgment or for a new trial, defendant appealed.

Defendant is a corporation and owns and operates the Colonial Hospital at Rochester in this state. Plaintiff is a farmer and resides with his family on a farm in Dodge county, a few miles out from Rochester. His son, John, lived at home, became 15 years of age on January 16, 1925, and was graduated from the eighth grade in school. On December 7, 1924, John was threatened with an attack of appendicitis. His father immediately took him to the hospital for care and medical attention, and he was placed in room 545 under the care of a physician and attending nurses. The appendix symptoms subsided but an acute attack of tonsilitis developed. The patient's condition yielded to treatment and it was decided that he might return home on the eleventh day of that month.

During the afternoon of the tenth, while in bed in his room, the boy got manoeuvering with the electric light cord and button which

hung at the head of his bed for use by patients in calling attendants. This cord was about eight feet in length, with a plug attached at one end for the purpose of connecting the cord with the electric system. There was also a hard rubber cover or shield, nearly three inches in length by over an inch in diameter, with a hole lengthwise through the center large enough to receive the button and tapering down to the size of the cord at one end, which shield, in its proper place, formed a complete cover to the entire button and its connections with the wires in the cord. The cord was then slipped through this shield from the small end and the button was attached to the cord by fastening the end of the wires extending from the cord to the terminals at the base of the button by means of set screws. The shield then pushed up snugly over the button and fastened thereto by means of a screw through the side of the shield into the button formed a complete covering to the button and its connection with the cord.

The push button is over an inch in length and three-quarters of an inch in diameter, composed of brass intersected and lined with hard rubber insulation. The plunger or push bolt in the center is of hard rubber so that all parts of the button, except the terminals at the base, are fully insulated so that no shock would be received by coming in contact with any particular portion thereof except where the wires are attached, though the shield be out of place. The theory upon which respondent seeks to recover is that the appellant was negligent with regard to maintaining the push button in safe condition, in that it allowed the screw in the shield to become loose so that it dropped out and allowed the shield to get out of place, and in allowing this young boy to occupy the room with the button in such condition. The boy was lawfully in the room. He testified that he had used the button a number of times each day while there; that it always seemed to work all right; that the only thing he noticed was that the guard was loose; that it was loose a day or two before the accident; that he supposed the guard was intended to cover the electrical connection at the base of the button, but that he did not know there was any electricity or danger

down there; that when he first saw the guard it was in place over the button and appeared to be solid.

Under nearly all circumstances there is great danger and a commensurate duty of care in respect to such instrumentalities as electricity and explosives. Mattson v. M. & N. W. R. Co. 95 Minn. 477, 104 N. W. 443, 70 L. R. A. 503, 111 Am. St. 483, 5 Ann. Cas. 498; Dahl v. Valley Dredging Co. 125 Minn. 90, 145 N. W. 796, 52 L. R. A. (N. S.) 1173; 20 R. C. L. 52, and cases cited in note 5. The test of liability is the power of a prudent person to foresee injury and this question of course depends on the particular circumstances, the time, the place and the status of the person injured. 20 R. C. L. § 48, p. 52; Crowley v. Rochester Fireworks Co. 183 N. Y. 353, 76 N. E. 470, 3 L. R. A. (N. S.) 330, 5 Ann. Cas. 538.

In the present case, the issue whether the little screw, intended for holding the shield in place, was in its proper place when the boy was admitted to the room, was set at rest by the verdict of the jury. The evidence justifies the finding in that respect. The verdict established negligence on the part of the defendant. That issue settled, the only remaining question was whether the evidence made a question for the jury as to contributory negligence on the part of the boy, or was he guilty of such negligence as a matter of law? The boy testified, in effect, that the screw was gone; that the shield had slipped from the button a distance of a foot or more; that he was playing with the button and cord; that he pushed the shield back and forth on the cord and then placed the button in his mouth so that the connection at the base came in contact with the inner side of his lower lip, resulting in the burn and injury complained of. He testified that he received no shock; that he became momentarily blind; that his jaws set; that he yelled, jumped from his bed, and undertook to disconnect the cord from the current by pulling the plug from the socket in the wall, but that a nurse came to his rescue and disconnected it.

We have then a case where the person injured was one toward whom a liability attached under the general principles of negligence. This general liability has regard to the public at large. Under such a rule, it was the owner's duty to keep the premises in a reasonably

safe condition and, if there be hidden dangers upon the premises, he must use ordinary care to give persons rightly upon the premises warning thereof. Calvert v. Springfield Elec. L. & P. Co. 231 Ill. 290, 83 N. E. 184, 14 L. R. A. (N. S.) 782, 12 Ann. Cas. 423. But in the instant case the liability having attached, the duty of the owner was enlarged by the fact of the infancy of the person involved. Olesen v. Noren, 161 Minn. 113, 201 N. W. 296; Erickson v. M. St. P. & S. S. M. Ry. Co. 165 Minn. 106, 205 N. W. 889; Matson v. Port Townsend S. R. Co. 9 Wash. 449, 37 Pac. 705. The conduct which is required toward adults may fall short when exercised toward infants in the same circumstances. Rohloff v. Fair Haven & W. R. Co. 76 Conn. 689, 58 Atl. 5.

It is contended on behalf of appellant that it was entitled to a directed verdict or a new trial because the boy was guilty of contributory negligence. True, the boy was nearly 15 years of age, but the rule is well established that conduct which will constitute contributory negligence on the part of an adult may be proper care on the part of a minor. That which may be negligence on the part of one minor may be proper care on the part of another, depending on the age, discretion, intelligence, experience, etc. of the minor. The caution and care required of others toward children are measured by the age, the maturity, the capacity and the intelligence of the child.

A minor of the age of 15 years must be expected to exercise some degree of care but the measure of it depends upon his capacity and intelligence, which is ordinarily a question for the jury. The boy testified in effect that he was unfamiliar with electricity and that he did not know that there was any danger in handling the button. The jury saw the minor upon the witness stand, observed his demeanor, heard him testify and was much better able to judge his capacity than it can be possible for us to judge. The capacity cannot be safely measured in such matter by the difference of a year or two in the age of the minor. We are of the opinion and hold that under the evidence the question of the boy's contributory negligence was for the jury.

Affirmed.