# GEORGE V. KOLLER v. CHICAGO, ST. PAUL, MINNE-APOLIS & OMAHA RAILWAY COMPANY and Another.[1]

January 6, 1911.

Nos. 16,840—(180).

**Injury to fireman — questions for jury.**

A fireman, to take notice and observation of the condition of a semaphore signal by which the movements of his train were controlled, projected his body out of the gangway between the engine and tender, and was struck on the head by a pole placed near the track to sustain a telltale wire near the approach of a bridge, and seriously injured. It is *held*, that

1. The questions (1) whether the defendants were negligent in maintaining the pole in the particular place, (2) whether plaintiff was guilty of contributory negligence in looking for the semaphore from his position in the gangway, and (3) whether he assumed the risk of danger of contact with the pole, were on the evidence questions of fact for the jury.

2. The evidence is not so far conclusive in defendants' favor upon either question as to justify interference by this court.

3. It is not the province of the supreme court to reconcile conflicting evidence, nor to solve doubts arising therefrom. That duty rests upon the jury and trial court.

4. No reversible errors are disclosed by the record.

Action in the district court for Ramsey county against the Chicago, St. Paul, Minneapolis & Omaha Railway Company and the Great Northern Railway Company to recover $25,000 for personal injuries. The facts are stated in the opinion. The negligence alleged in the complaint is stated in the third paragraph of the opinion. The separate answer of defendant Great Northern Company alleged it had no knowledge or information sufficient to form a belief as to the allegations of the complaint, and therefore left plaintiff to make such proof thereof as he might be advised. The separate

[1]Reported in 129 N. W. 220.

[Note]   Liability of street railway company for injury to employee from poles placed too near track, see note in 15 L.R.A.(N.S.) 1109.

answer of defendant Omaha Company set up the contributory negligence of plaintiff, and alleged that if plaintiff had a cause of action it was solely by reason of the act of congress of April 22, 1908, and the circuit court of the United States alone had jurisdiction of the subject matter of the action. The reply admitted that plaintiff was employed upon a train engaged in conducting commerce between the states and would have a cause of action under the act of congress, and denied the other allegations of the answer.

The case was tried before Kelly, J., and a jury which returned a verdict in favor of plaintiff for $7,500. The defendants moved separately for judgment in their favor notwithstanding the verdict, or for a new trial. The motions were denied. From the order denying the motions, defendants appealed separately. Affirmed.

*James B. Sheean* and *Royal A. Stone,* for appellant Chicago, St. Paul, Minneapolis & Omaha Railway Company.

*M. L. Countryman,* for appellant Great Northern Railway Company.

*W. R. Duxbury,* for respondent.

BROWN, J.

The facts in this case are substantially as follows: Between St. Paul and Minneapolis defendant Chicago, St. Paul, Minneapolis & Omaha Railway Company uses in the operation of its trains two parallel tracks belonging to the defendant Great Northern Railway Company; the right being secured by a lease or traffic arrangement with the latter company. These particular tracks are used exclusively in the passenger train service, and trains moving over the same are controlled by the block signal system. Under this system by the passage of trains semaphore signals are set automatically by electric current, and indicate to other trains following whether the track is clear or obstructed. The semaphore signals are erected between the tracks at convenient points for observation by employees in charge of moving trains.

About four miles from Minneapolis, in the direction of St. Paul, a bridge extends over these tracks, described in the record as a "low bridge;" that is, a bridge so low as to prevent those engaged upon box

cars in the freight service from passing under the same in a standing position. As a warning to those thus engaged "telltale signals" are placed on each side of the bridge, with which they come in contact before reaching the bridge and are thus reminded of danger ahead. The telltale signals are straps of leather attached to a wire extended a proper distance above and over the tracks. The wire is attached to upright poles erected between the tracks. One of these poles, the alleged cause of plaintiff's injuries, was placed between the two passenger tracks, which tracks at this point are about ten feet apart. It is the duty of both engineer and fireman to keep a watch for the block signals and to observe their condition, for thereby the movement of the train is controlled. Plaintiff was in the employ of the Omaha Company as a fireman on one of its passenger trains.

On the day of his injury his train was proceeding from St. Paul to Minneapolis. A short distance before reaching the low bridge referred to, he was occupied in shoveling coal into the fire box of the engine, at the conclusion of which he stepped to the side of the engine, in the gangway between the engine and tender, to take note of the condition of the semaphore a short distance beyond the bridge. He stepped to the edge of the deck or floor of the tender, took hold of the handholds on the outer side, one on the tender and the other on the engine, leaned out to look for the signal, and, he claims, was struck by the pole supporting the telltale signals, thrown from the engine, and severely injured. He subsequently brought this action to recover for his injuries, alleging as grounds for his action the negligent erection and maintenance of the telltale pole in too close proximity to the track over which the train was operated. Plaintiff had a verdict, and defendants appealed from an order denying their motions, separately made, for judgment notwithstanding the verdict or a new trial.

It is the contention of both defendants in support of the motion for final judgment that the telltale pole was a proper and necessary structure, and that the evidence wholly fails to establish a case of negligence in placing the same between the passenger tracks; (2) that it wholly fails to show that plaintiff came in contact with it when he leaned out of the gangway to take notice of the condition

of the semaphore; (3) that it conclusively appears that he was guilty of contributory negligence in making his observation in this manner; (4) that he knew of the presence of structures of this character in close proximity to the track and assumed the risks; and, therefore, that the trial court erred in denying the motion for judgment notwithstanding the verdict. The same contentions are made in support of the motion for a new trial, and, further, that the court erred in its instructions to the jury.

1. There can be no question but that the pole was a necessary structure. Its purpose, in connection with another pole between other tracks, was to sustain the telltale wire, a contrivance prudence required the company to maintain for the protection of its employees. The question, so far as involves the issue of negligence, is whether the pole was necessarily placed and maintained between these tracks, or whether it could have been placed elsewhere, between other tracks, and made to serve the same purpose, and with less danger to those operating trains.

The law is well settled that the railway company may place structures and signal posts along and adjacent to its tracks, but in doing so must act with due regard to the safety of its employees. They must be placed, when practicable, at a reasonably safe distance from the track, so as not to endanger those operating trains. When impracticable to so place them, and it becomes necessary to locate them in dangerous proximity to tracks, notice and warning to employees is necessary.

In the case at bar the question whether the particular pole was necessarily placed between the passenger tracks, and whether it was impracticable to place it elsewhere, was submitted to the jury. Our examination of the record discloses evidence tending to show that the pole was not necessarily placed between these tracks. There is substantial evidence to the effect that it could, without impairing its usefulness, have been placed between the passenger and an adjoining freight track, which were in the neighborhood of twenty feet apart, and the jury was justified in finding that, had it been placed at that point, it would not have endangered employees in the

least.   We therefore affirm the conclusion of the jury that it was negligently placed and maintained between the passenger tracks.

2. As respects the liability of defendants, no distinction can be made between them.   Moon v. Northern Pacific R. Co., 46 Minn. 106, 48 N. W. 679, 24 Am. St. 194.   The tracks were owned and controlled by the Great Northern Company, and the Omaha Company was using the same and operating its trains thereon under a traffic arrangement or lease with that company.   For the negligent maintenance of the telltale pole, under the issues as made and submitted to the jury, both companies are liable.   The question of warning employees of dangerous structures in close proximity to the tracks did not arise upon the trial.   The court submitted the case to the jury without reference to the subject of warning, saying that if the pole was necessarily placed and maintained between the passenger tracks plaintiff could not recover.   It follows that the contention of counsel for the Great Northern Company that it was under no duty or obligation to warn and instruct employees of the Omaha Company need not be considered.   The question is not presented by the record.

3. The assignments of error challenging the correctness of the instructions to the jury have been carefully examined, with the result that no reversible error appears.   The charge, taken as a whole, was a full and fair statement of the issues presented, and clearly informed the jury of the rules of law guiding their deliberations.

4. We have also given attention to the claim that plaintiff was guilty of contributory negligence, with the result that in our opinion the question was properly submitted to the jury.

It appears from the evidence that customarily observations of semaphore signals were taken by firemen from whatever position they happened to occupy when called upon to do so—sometimes through the window in the cab of the engine, one immediately in front of the fireman's seat and one at the side of the cab, and again by leaning out of the gangway, as in the case at bar, far enough to be enabled to discover it.   There is no evidence that plaintiff knew of the presence of the telltale pole at this particular place.   He testified that he was not aware of its presence.   Nor is the suggestion

113 M.—12.

that when he projected his head out of the gangway the pole was immediately in his view, and could have been plainly seen, conclusively sustained by the evidence. Plaintiff testified, both on direct and cross-examination, that when he leaned out to take his observations he was immediately struck by something and thrown from the engine. If this testimony be true, then it is clear that he did not have time to look forward, and could not have seen the pole. The question was one of fact for the jury.

The same may be said in reference to the further contention that plaintiff assumed the risk of injury from this and other structures along the track. Johnson v. St. Paul, M. & M. Ry. Co., 43 Minn. 53, 44 N. W. 884; Clay v. Chicago, M. & St. P. Ry. Co., 104 Minn. 1, 115 N. W. 949; Koepsel v. Minneapolis, St. P. & S. S. M. Ry. Co., 100 Minn. 202, 110 N. W. 974; Flanders v. Chicago, St. P., M. & O. Ry. Co., 51 Minn. 193, 53 N. W. 544. Plaintiff had been employed upon this run in the neighborhood of two months, and the evidence is not clear that he was aware of this or any other structure near enough to the track to endanger the safety of employees operating trains.

5. The important and serious question in the case is whether plaintiff was struck by the telltale pole at all. It is contended by both defendants, with much earnestness and force, not only that the evidence is clearly and palpably against the conclusion that plaintiff was so injured, but also that it was practically impossible, from the position he occupied in the gangway, to have come in contact with the pole. We have given the record and defendants' claims upon this branch of the case careful attention, reaching the conclusion, though not without some feelings of doubt, that the trial court properly submitted the question to the jury. Whatever doubts we entertain, arising as they do from a reading of the cold record and without the advantage of the presence of the witnesses, are overcome by the fact that two learned and impartial judges, with the advantage of seeing and hearing the witnesses, have sent the case to two separate juries. The first jury disagreed, and the second returned the present verdict for plaintiff, which has received the approval of the trial court. In view of the state of the evidence, we are clear

that it is not a case for judgment notwithstanding the verdict, and no substantial purpose will be served by sending the issues back for a third trial. We therefore affirm the order appealed from.

It appears that the telltale pole was between the passenger tracks, which were about ten feet apart. The distance between the pole and the gangway floor, at a height of three feet, was forty-two inches. The distance between the pole and tender, at a height of ten feet, was twenty-three inches. Plaintiff was standing on the gangway floor, at the outer edge thereof, and, taking hold of the handholds fastened to the side of the engine and tender, leaned forward, and was, so he claims, immediately struck by something and thrown to the ground. It is contended that, in view of the distance from the pole, which is not substantially disputed, it was impossible for plaintiff to project his head out far enough to come in contact with the pole. There is force in this contention; but we are of the opinion that it was not in fact impossible that the accident could happen as claimed by plaintiff. He testified that, immediately upon leaning out, he was struck by something. He did not see the pole, but was positive that something hit him. The evidence does not disclose any other object or structure sufficiently near the track at this point with which he could have come in contact, and the conclusion must be, either that he lost his balance and fell off the engine, or that his story is true. In this situation we look to the record to ascertain whether his version of the matter is to any substantial degree corroborated. We find evidence of that character. The side of plaintiff's face disclosed evidence of a violent injury, and which might have been caused by contact with the pole. Two track laborers testified that he was picked up near the pole. Both were present at the time. One of them stated that plaintiff was about twenty feet, and the other five or six steps, from the pole. He was six feet tall, and at the height of his head from the ground, standing in the gangway, eleven or twelve feet, the pole was twenty-three inches away. The handholds were on the outer side of the tender, and, taking into account the necessary length of plaintiff's arms, and some swaying motion of the engine, it is not only possible, but very probable, that the side of his face came in contact with the pole.

The evidence offered by defendants tends in the other direction. The conductor of the train testified that, when picked up after the accident, plaintiff's body was sixty-eight feet beyond the pole. If this testimony be taken as expressing the truth of the situation, it is a little difficult to understand how the pole could have been the cause of plaintiff's fall from the engine. It is improbable that, if struck by the pole, he would have been rolled or carried so far in that direction, though the train was running between twenty and twenty-five miles an hour. But doubt is thrown upon the accuracy of this testimony by that given by the engineer. The train was proceeding westward to Minneapolis. The telltale pole was one hundred fifty or more feet beyond or west of the overhead bridge already referred to. There was evidence that plaintiff was standing in the gangway while the engine was passing under the bridge; but it does not appear, at least not conclusively, that he was then leaning out looking for the semaphore. The engineer testified that he was paying no particular attention to the fireman until after the engine reached the bridge, but "I don't remember just where, somewhere between the bridge and the pole, I accidentally turned around, and as I turned around my fireman was going out through the gangway * * * on all fours." The witness was unable to say whether plaintiff was struck by the pole, but the inference from his testimony is that he fell off. However, the testimony that plaintiff fell or was thrown off between the bridge and the pole conflicts with the other evidence offered by defendant, that when picked up, limp and unconscious, he was sixty-eight feet beyond or west of the pole.

In this condition of the evidence we are not justified in interfering with the order of the lower court approving the verdict. We are not required to reconcile the conflicting evidence, nor to solve doubts arising therefrom. It was for the jury and the trial court to determine the facts. We have only to determine whether the evidence, taken as a whole, fairly tends to support the jury. We hold that it does.

Order affirmed.

SIMPSON, J., took no part.