S. J. HAARALA v. SELMA MICKELSON and Another.[1]

January 17, 1913.

Nos. 17,776—(120).

**Decision not sustained by evidence.**

In this, an action to adjudge and foreclose a vendor's lien on real property, the evidence examined, and *held* not to sustain the decision.

Action in the district court for Otter Tail county to recover $2,385, the unpaid purchase price of certain land, to obtain a vendor's lien

[1] Reported in 139 N. W. 504.

thereon for that amount and to foreclose the lien. The answer alleged that the consideration named in the deed was not intended to be and was not the consideration agreed upon between plaintiff and defendant Selma; that the same was inserted as an arbitrary sum at the suggestion of plaintiff, for the purpose of showing the conveyance was made for a valuable consideration and for no other purpose; that the real consideration was in part the love and affection of plaintiff for her daughter, the defendant Selma; that a further consideration moving from defendant Selma to the plaintiff for the conveyance consisted of services theretofore rendered plaintiff and her husband by defendant Selma and her husband at the special instance and request of plaintiff and the father of defendant Selma, for a period of three years prior to the execution of the deed; that at the time of conveyance defendant Selma also paid plaintiff the sum of $100, good and lawful money, and it was then agreed between plaintiff and defendant Selma that said sum should be in full of all demands for the conveyance. The answer further alleged that defendant Selma and her husband returned to Minnesota from the state of Washington, at the special instance and request of plaintiff and the father of defendant Selma, with the understanding that plaintiff had purchased the land for her daughter and would give it to her on condition that she should return and make her home there near the home of plaintiff; that defendants left Washington and returned to Minnesota, took possession of the land and have since made the same their home, cultivated and improved the land, relying on the promise; that for three years and upwards prior to the conveyance each of the defendants rendered valuable services to plaintiff and her husband at their special instance and request, and by virtue of taking possession of the property, cultivating and improving it under those terms and conditions the defendant Selma became the equitable owner of the property and entitled to a conveyance, and the conveyance was made to her in recognition of the agreement and of the services rendered, and in consideration of love and affection and the sum of $100. The new matter in the answer was denied in the reply.

The case was tried before Nye, J., who made findings of fact and

ordered judgment in favor of plaintiff for the sum of $2,385, that she have a vendor's lien upon the premises conveyed for that amount, and that the lien be foreclosed by a sale thereof. From a judgment entered pursuant to the order for judgment, defendants appealed. Reversed and new trial granted.

*O. J. Larson, M. E. Louisell* and *John Saari,* for appellants.
*Anton Thompson,* for respondent.

HOLT, J.

Lisa S. Kivijarvi deeded 80 acres of land in Otter Tail county to her daughter, the defendant, Selma Mickelson, on the 21st day of September, 1910. This action was brought by the mother for a vendor's lien and the foreclosure thereof against the land conveyed for the alleged purchase price of $2,385. Findings were made for plaintiff, but before judgment she died, and by stipulation the administrator of her estate was substituted as plaintiff, and judgment entered, from which this appeal is taken.

The assignments of error center upon the sufficiency of the evidence to sustain the findings to the effect that there was a sale under the terms of which there was due and payable on the delivery of the deed the sum of $2,385, so as to support the judgment for foreclosure as decreed; or was the transaction a gift, as defendants contend?

The record shows that the mother carried on a farm in Otter Tail county, upon which she resided with her husband. She, however, was the owner of the farm, together with other property, and appears to have been the actual head of the family. Both she and her husband were close to 80 years of age at the time of the transaction. There were several children, and the mother had, at times, assisted the different ones, including this daughter, with money and property. Three or four years before this deed was executed, defendants were in the state of Washington, and were apparently in hard circumstances. Mrs. Kivijarvi admitted that she then wrote them that she had bought these 80 acres across the road from her own farm for them to live on, and sent them money, so that they could come back to Minnesota. When they came, she says she took them to this land

and said: "Here is your house; go in there and live." The defendants lived there a little over a year; then, because of some disagreement with the mother in regard to the right to wood and stable room, they left, and for about two years rented a farm in the neighborhood. In September, 1910, when Mrs. Kivijarvi was threshing on her farm, she sent for this daughter to help her. The husband of Selma also came there. It was then decided to make a deed to the 80 acres to the daughter. The mother and daughter, with their husbands, drove to Otter Tail, where, at the bank, the deed was drawn, executed, and delivered, and the daughter paid $100 to the mother. This money the latter counted and accepted. The daughter says that when they got outside the bank the mother gave back the money, while the latter claims that, as she went to get into the wagon to go home, she dropped the money, wrapped in a handkerchief, in the wagon box, and the daughter picked it up and kept it. This $100 was not asked for by the mother again. The defendant's contention is that the deed was a gift; that the $100 was passed in the bank because all understood that, to make the transaction legal, a money consideration was necessary; and that the amount of $2,385 was inserted in the deed for the purpose of concealing from the other children that the land was given to the daughter. The defendants also claimed that, upon suggestion of the mother, it was agreed to carry out that plan by telling the brothers of defendant Selma, and others, that it was a cash sale.

There is no claim of fraud, deception, or undue influence in the transaction. The intention was to convey the land. And if the record showed nothing more than the fact that the consideration stated in the deed was not paid, the inference could well be drawn that there was a sale, and that the agreement was that the payment of the price was to be made immediately on delivery of the deed. Sennett v. Shehan, 27 Minn. 328, 7 N. W. 266. But, conceding that there was a sale, and not a gift, the evidence, in our opinion, clearly points to the conclusion that in no event could there have been an understanding or agreement that the balance of the price, namely, $2,285, was to be paid when the deed was delivered, or within a short time thereafter. The defendants could not get to

Minnesota a few years before this without the mother's assistance. The three years they had lived as renters had evidently not afforded much accumulation, for the mother admitted she did know that the daughter could not then pay. There could not, therefore, have been an understanding that the sale was to be for cash; hence, if one was made, it was on time. If the latter, we would expect some conversations relative to the time of payment of part or all of the purchase price, and the rate and time of payment of interest on deferred payments. But the record is wholly devoid of any testimony of that kind.

It is also hard to believe that one who had had several land transactions, like plaintiff, and who had accumulated property, so as not only to have a fair competence for herself and husband, but so that she could, from time to time, assist the children, was not acquainted with the usual mode of evidencing a transaction like the one in hand by note, mortgage, or other writing. The only question put to Mrs. Kivijarvi in reference to when the balance was to be paid was on cross-examination, when she was asked: "Well, when did Selma promise to pay the balance? Answer: She didn't know when she would pay the balance."

It is true that all parties to this litigation labored under the disadvantage of testifying through an interpreter, and also that they were more or less strangers to the legal requirements in transactions involving matters now under consideration. Therefore the improbable in the situation of the parties and the contradictions in the testimony of Mrs. Kivijarvi should not reflect so strongly against her theory of the right to prevail as if she were acquainted with our language and experienced in our ways of doing business. But, making all due allowance for this, there still appears such entire lack of evidence to support the essential finding on which the judgment as to the foreclosure of the vendor's lien must rest, namely, that the purchase price was to be paid immediately upon the delivery of the deed, that the judgment cannot stand. The court, in other words, imported into the transaction a provision which was neither discussed nor agreed upon by the parties themselves, and which the evi-

dence affirmatively shows could not have been within the contemplation of the parties.

Furthermore, if there was a sale, it is difficult to escape the conviction that $100 was then paid, so that in no event could a vendor's lien for a sum including that amount be adjudged. Mrs. Kivijarvi's version of how that money was paid, and how it thereafter got into her daughter's possession, and remained there without the slightest protest, or request to return it, ought to extinguish the vendor's lien to that amount at least. There is no claim that the daughter repossessed herself of this $100 by trickery, fraud, or force. Nor is it easy to reconcile the mother's conduct with reference to this alleged payment on any other theory than that she regarded the money all the time as her daughter's, used merely in the bank to lend legality to the transaction. On cross-examination she stated that she gave the $100 back to Selma, according to the understanding.

We do not desire to modify in the least the rule that is stated thus in Koller v. Chicago, St. P. M. & O. Ry. Co. 113 Minn. 173, 180, 129 N. W. 223:

"We are not required to reconcile the conflicting evidence, nor to solve doubts arising therefrom. It was for the jury and the trial court to determine the facts. We have only to determine whether the evidence, taken as a whole, fairly tends to support the jury."

To the same effect, among other decisions, is Northland Produce Co. v. Stephens, 116 Minn. 23, 133. N. W. 93, wherein it is held that "we have only to inquire whether the evidence is clearly and palpably against the findings. If there be evidence in the record fairly tending to support the findings, they must be sustained."

Aside from the challenged finding that there is no evidence to show that the purchase price was due immediately upon the delivery of the deed, we think the evidence in regard to there being a sale, instead of a gift, is so unsatisfactory that the findings made cannot

be held to be fairly supported. Mr. Kivijarvi, who was present and executed the deed, when asked whether anything was said about how defendants were to pay for the land, answered: "Nothing at all * * * never said anything to me" whether it was for cash, or what was to be given for that. On cross-examination he testified that he understood his wife had given the property to the daughter, and that the land belonged to Selma and was given to her until before the action was brought. Mrs. Kivijarvi, although claiming that she made a sale to the daughter of the farm for the price she had bought it for, namely, $2,385, gave testimony which apparently contradicted this, as already indicated, and as appears from these questions and answers on cross-examination, viz.:

"Now, didn't you give this land to Selma with the understanding that she was to live there, and keep the land and not dispose of it?" Answer: "Yes, sir."

Question: "Didn't you tell Selma not to sell the land to John [the brother]—that you did not want him to buy it?" Answer: "She can't remember."

Question: "You never asked for this $100 again, did you, that you gave back to Selma at Otter Tail?" Answer: "I can't remember."

Question: "Now, last winter, after this summons and complaint was served on Selma, didn't you offer to buy that land back from Selma?" Answer: "Yes, sir; but it was the understanding not to sell to a stranger, that she would take it back."

Question: "And that is why you brought this suit to prevent that sale?" Answer: "Yes, sir."

Question: "If they had lived on the land and not attempted to sell the land, then you would not have proceeded with this suit?" Answer: "She don't think so."

Question: "The intention was that the land should be kept by Selma, and never be sold to strangers; that was your intention?" Answer: "Yes, sir."

We conclude that there should be a retrial of the case on the ground that the decision is not sustained by the evidence.

Judgment is reversed, and a new trial awarded.