## ANNA BERG v. B. B. FUEL COMPANY.[1]

July 3, 1913.

Nos. 18,104—(206).

**Rule of "turntable cases" — evidence.**

1. Evidence *held* sufficient to sustain a recovery, under the doctrine of the "turntable cases," for injury to a 10-year old boy from an unconcealed unguarded, and unprotected bark machine, consisting of an endless chain running in a slanting trough, and used for removing bark from the river at a place, within a city, where children frequently bathed, fished, and gathered wood.

[1] Reported in 142 N. W. 321.

---

Note.—On the doctrine of attractive nuisance, generally, see notes in 19 L.R.A. (N.S.) 1094, and 20 L.R.A.(N.S.) 903.

The question of the liability of railroad companies for injury to children playing on turntables, is discussed in notes in 4 L.R.A.(N.S.) 80 and 16 L.R.A.(N.S.) 1129.

Contributory negligence.

2. Evidence *held* not to show contributory negligence as a matter of law.

Action in the district court for Hennepin county by the mother of John Berg, a minor, to recover $10,300 for injury to her son in a so-called bark machine or conveyor. The case was tried before Dickinson, J., who at the close of plaintiff's testimony and at the end of the case denied defendant's motions for a directed verdict, and a jury which returned a verdict of $775 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Elijah Barton,* for appellant.

*Grotte & Bowen,* for respondent.

Philip E. Brown, J.

Plaintiff sued on behalf of her minor son for damages for a personal injury received by him. She had a verdict, and the defendant appealed from an order denying its alternative motion.

It is undisputed that, for some years prior to the time of the injury, defendant had been operating, on premises leased by it and located on the river bank in the city of Minneapolis, a bark machine, used for the purpose of conveying bark from the river to the bank. It consisted of a trough from 12 to 18 inches wide and some five inches deep, extending from the river upward for about 100 feet and at an angle of about 30 degrees. An endless chain ran in a groove in the bottom of the trough. Above the chain and at right angles thereto a number of cross-bars about three inches wide and 14 inches long were fastened to the chain at intervals of four or five feet, so that when in motion they carried bark and refuse up the trough. About 15 feet from the river and three or four feet above the trough, a timber extended across it at right angles, underneath which and serving as a support to the trough, was another timber extending beyond each side. The machine was operated by an electric motor, all parts of which were housed under the same. When in motion the chain traveled nearly as fast as a man can walk.

On August 31, 1911, while the machine was in operation, plain-

tiff's son, then about ten and one-half years old, while sitting on the cross-timber which held the trough, took hold of a piece of wood about two inches thick, six inches wide, and four feet long, which was moving, in the trough, and lifted it so that his thumb was caught between the end of the wood and the upper cross-piece, where-upon the chain pushed the wood against his hand, causing the injury complained of.

The only question involved, so far as plaintiff's claims are concerned, is whether the facts bring this case within the doctrine of the so-called "turntable cases." The foundations of this doctrine have so frequently been discussed, that it is necessary here merely to advert to the rule. In Keffe v. Milwaukee & St. Paul Ry. Co. 21 Minn. 207, 18 Am. Rep. 393, it is stated in the syllabus that, "the owner of dangerous machinery who leaves it in an open place, though on his own land, where he has reason to believe that young children will be attracted to play with it and be injured, is bound to use reasonable care to protect such children from the danger to which they are thus exposed." In Ellington v. Great Northern Ry. Co. 96 Minn. 176, 183, 104 N. W. 827, 830, the court, in speaking of the "turntable cases," said:

"The doctrine of those cases is founded on the conduct of the owner of premises in keeping thereon unconcealed and unprotected dangerous instrumentalities, which are in their nature alluring and attractive to children of tender years. From such conduct on the part of the owner of the premises, the law implies an invitation to infants to enter thereon for the purpose of amusing themselves. But this court has declined to extend that doctrine to other cases, and it has been strictly limited to dangerous machinery and instrumentalities."

Was the evidence sufficient to support a finding that the bark machine, when in operation, was an unconcealed and unprotected dangerous instrumentality, of a nature alluring to children of tender years, so as to impose a duty upon defendant to exercise ordinary care to keep children from being exposed to danger therefrom? This question was clearly for the jury. The fact of the injury here in-

volved cannot be ignored, and it is apparent that a person grasping anything of considerable substance moving in the trough might easily have his hand injured similarly. The chain was unconcealed and unprotected, as was also the entire instrumentality, excepting the motor. The machine was located in the city of Minneapolis, in a place easily accessible to children. It was unguarded by fence or otherwise. Children frequently came to the place to fish, bathe, and get wood. Naturally, the operation of the machine would interest them, there being, indeed, evidence tending to show that plaintiff's son and other boys had, in fact, played on the machine on various prior occasions. It appears that defendant's officers and agents often warned children away, but not that plaintiff's son was ever present when this was done. Defendant's evidence tended to show there was no way in which the machine could be fenced consistently with its operation. The testimony on this point, however, was in the nature of conclusions, the reasons constituting the basis thereof being for the consideration of the jury.

"We are not required," said Chief Justice Brown, in Koller v. Chicago, St. P. M. & O. Ry. Co. 113 Minn. 173, 180, 129 N. W. 220, 223, "to reconcile the conflicting evidence, nor to solve doubts arising therefrom. It was for the jury and the trial court to determine the facts. We have only to determine whether the evidence, taken as a whole, fairly tends to support the jury."

This rule also disposes of defendant's contentions that due care was exercised to avoid injury to children from the machine and that the plaintiff's son was guilty of contributory negligence as a matter of law.

Order affirmed.