EUSEBIO DÍAZ QUIÑONES ET AL., Plaintiffs and Appellants, *v.* CENTRAL LAFAYETTE, Defendant and Appellee.

No. 9359.   Argued November 14, 1946.—Decided January 20, 1947.

*Virgilio Brunet* and *Ubaldo Aponte* for appellants. *Adolfo Porrata Doria* and *F. J. Pérez Almiroty* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

Central Lafayette transports cane it grinds from the fields to its mill in cane cars hauled by a locomotive. One of its locomotives was pulling fifteen cars loaded with cane upgrade at five or six miles an hour. A nine year old boy approached one of the moving cars and attempted to grab a piece of cane. The cane was so tightly packed that the boy was dragged alongside the car. He fell on the track, was run over by the wheels of the car, and was killed. His parents filed this suit against Central Lafayette for damages. The district court after a trial on the merits entered judgment for the defendant, and the plaintiffs appealed.

The plaintiffs contend that the lower court erred in refusing to apply the attractive nuisance doctrine to the facts of this case. This doctrine requires property owners to take affirmative precautions to protect children who, even though they are trespassers, do not realize the dangers to which they are subjecting themselves. But opposed to this doctrine, is the policy against unduly interfering with or placing unreasonably burdensome restrictions on the use of property. We therefore have the interest of society in preserving the safety of children as against the legitimate interest of property owners to use their own property with reasonable freedom. The effort to determine which of these

two competing considerations will prevail in a given case has engendered considerable litigation. Annotations, 36 A.L.R. 34; 39 A.L.R. 486; 45 A.L.R. 982; 53 A.L.R. 1344; 60 A.L.R. 1444; 145 A.L.R. 322.[1]

The Restatement, Torts, § 339, p. 920, synthesizes the attractive nuisance doctrine as follows:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeding in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."[2]

The importance of the attractive nuisance doctrine is that it mitigates under appropriate circumstances the application

---

[1] See Hudson, The Turntable Cases in The Federal Courts, 36 Harv. L. Rev. 826; Mindel, The Doctrine of Attractive Nuisances, The Daily Record, Baltimore, Md., January 3, 1936; Green, *Landowner* v. *Intruder; Intruder* v. *Landowner.* Basis of Responsibility in Tort, 21 Mich. L. Rev. 495; Bohlen, The Duty of a Landowner Towards Those Entering His Premises of Their Own Right, 69 U. of Pa. L. Rev. 142, 237, 340; Note, 86 U. of Pa. L. Rev. 300.

[2] It should be noted that the rule comes into play not only when the child trespasses on the defendant's land but also where as here the child trespasses on a car or other potentially dangerous object on a public or private highway or right of way. *Ramos* v. *Sucesión J. Serrallés*, 51 P.R.R. 332; Green, *supra*, p. 506, footnote 57.

We also note, although the point is not involved in this case, that this Court has followed what Prosser calls the "better authorities" by holding that it is not necessary that the child be originally attracted by the condition which constitutes the danger; it is sufficient if the defendant should have foreseen that children were likely to trespass and thereby reach the scene of danger, even though the children are ignorant of the dangerous condition and are therefore not attracted by it to the scene. *Ramos* v. *Sucesión J. Serrallés*, supra, 343–44; Prosser on Torts, § 77, p. 619, and cases cited therein; Restatement. § 339, Comment on Clause (a), pp. 920–21.

to children of the rule that a property owner owes no legal duty to a trespasser whose presence is not reasonably anticipated other than to refrain from inflicting wilful injury or to take reasonable precautions after his presence actually becomes known. *Ramos* v. *Sucesión J. Serrallés,* 51 P.R.R. 332, 341; *Ortiz* v. *American Railroad Co.* 62 P.R.R. 171, 182–83; *Vega* v. *American R.R. Co. of P. R.,* 57 P.R.R. 365, 369; *Figueroa* v. *American Railroad Co.,* 64 P.R.R. 320; *Shell Petroleum Corporation* v. *Beers,* 91 P.(2d) 777 (Okla. 1938); Prosser on Torts, § 77, p. 609; Bohlen & Harper, Torts, §§ 88–89, pp. 212–14. In contrast, an owner of property which is properly classified as an attractive nuisance owes a higher duty of care toward children. This means that under the conditions laid down in § 339, a defendant property owner cannot as in the ordinary case simply fold his arms. He must under these circumstances take reasonable affirmative steps to prevent children from being harmed or else be held liable for injuries incurred by them. This is not to say that the attractive nuisance doctrine renders a defendant an insurer of the safety of children. But under it he is required to take precautions to prevent their injury such as warning them, posting guards to prevent their injury, erection of fences and safety devices, etc.; and it is the failure to take such affirmative precautions which authorizes recovery under this doctrine. Prosser, *supra,* pp. 621–25; Bohlen and Harper, *supra,* §§ 93–94, pp. 219–21.

In the case before us, the plaintiffs argue that a loaded moving cane car has a peculiar attractiveness for children, who are tempted to snatch a piece of cane therefrom as the car passes by; that this was a custom of the children in this area which was either known to the defendant or should have reasonably been anticipated by it; that because of these facts, the defendant was required under the attractive nuisance doctrine to take affirmative precautions to prevent children from attempting to seize cane from its moving cars in order

that the children would not run the risk of injury which they could not be expected to realize; and that the death of the plaintiffs' son was caused by the negligence of the defendant in failing to take such affirmative precautions, entitling the plaintiffs to recover damages therefor.

In support of this argument, the plaintiffs assert that we held the defendant liable on the theory of attractive nuisance in *Ramos* v. *Sucesión J. Serrallés, supra,* and that the facts here are sufficiently similar to those in the *Ramos* case to call for the same result here. We therefore turn first to an examination of the facts and reasoning of that case.

In the *Ramos* case employees of the defendant were hauling sugar cane in five cars drawn by oxen. The drivers were forced to stop the cars because a vehicle was parked across the trucks. Many children customarily came to this place to pick up cane and to climb on the cars. One of the laborers took advantage of this opportunity to feed the oxen, with the assistance of the drivers. He then signalled the drivers to proceed. The cars stopped immediately after they started when a woman screamed that one of the cars had run over a child.

After citation of our previous cases on attractive nuisance[3] and an extensive discussion of the doctrine, we said at pp. 347–49:

"... Although technically one can not consider a freight car loaded with sugar cane as an attractive nuisance, the truth is that it can not be denied that it is somewhat attractive to children. ...

"\*     \*     \*     \*     \*     \*     \*

"In accordance with the decisions cited, the degree of liability or care that should be exercised by the defendant varies in relation to the utility of the dangerous object. In the instant case, it can not be denied that the employment of railroad cars for the transportation

---

[3] *Rivera* v. *Porto Rico Drug Co.,* 32 P.R.R. 470; *González* v. *P. R. Ry., Lt. & P. Co.,* 34 P.R.R. 545; *Álvarez* v. *Santa Isabel Sugar Co.* 37 P.R.R. 100; *Acosta* v. *P.R.R. Ry., Lt. & P. Co.* 37 P.R.R. 388; *Berríos* v. *Garáu,* 46 P.R.R. 773.

of cane is useful to the defendant and to the industry in which it is engaged. It must also be admitted that the cane-sugar industry is useful to the community. It is not necessary, therefore, to expect extraordinary precautions on the part of the defendant, in the supposition that we are dealing with an attractive nuisance, because that would amount to unduly burdening an industry which is socially useful; but we firmly think that said defendant was bound to take all ordinary precautions that would tend to avoid injury provided they were reasonable, not too expensive, and that they would not destroy the usefulness of the instrumentality.

"There is no doubt that sugar-cane cars, either empty or loaded, [either standing or in motion] [4] constitute an attraction to children. The defendant should have anticipated the presence of children at the place of danger and should have exercised due care to avoid accidents when the cars got under way. In our opinion, the liability of said defendant is manifest, whether we adopt the attractive-nuisance doctrine or whether we take as basis the general principles applicable in cases of negligence. The evidence shows that the drivers' attention was distracted by the feeding of the oxen. Although it has been shown that there were no children near the track at the time, the truth is that on other occasions they used to approach the place of danger, and that, as we have already said, the defendant should have anticipated the presence of children at that place. *Denver City Tramway Co.* v. *Nicholas,* 84 Pac. 813. The drivers should have been on the alert to prevent the children living in the neighborhood of the tracks from coming to the place of danger. Had they exercised any measure of vigilance it is to be presumed that they would have seen the girl and avoided the accident that occurred when the cars were put in motion. This vigilance did not burden the defendant with an aditional expense nor did it impose unreasonable precautions. *Louisville & R.R. Co.* v. *Steele,* 201 S.W. 43, 44, *et seq.*

"The only precaution taken by the carters was to look, which they did at the moment they got under way and sat on the yokes. As they were engaged in feeding the oxen without watching for children that might approach the track, we do not think that they took the reasonable precautions which they should have taken and which, if adopted, would undoubtedly have avoided the accident.

---

[4] The matter in brackets appears in the original Spanish version of the opinion in 51 D.P.R. 343, 359. It was inadvertently omitted in the translated opinion.

"Everything leads to the conclusion that the child stood in between two cars and was caught when the same started. The carters did not exercise due care because had they looked carefully and been attentive, they would have seen the girl and would have avoided the accident."

Although the quoted language at some points comes fairly close to invoking the attractive nuisance doctrine, on final analysis the *ratio decidendi* of the *Ramos* case was not that a loaded cane car, either stationary or in motion, is an attractive nuisance *per se* but rather that under the circumstances of this particular case the accident was due to ordinary negligence by the employees of the defendant who could have avoided it if they had looked carefully around the cars to be sure no children were there before they started again after having parked in a place where they knew children customarily came to pick up cane, to take cane from the cars, or to climb on the cars. Thereafter, in *Vega v. American R.R. Co. of P. R., supra,* pp. 370–72, we made it somewhat clearer that the liability of the defendant in the *Ramos* case was founded on ordinary negligence rather than the attractive nuisance doctrine.[4a]

But even if we had applied the attractive nuisance doctrine in the *Ramos* case, it does not follow that it applies here. The difference is that in the *Ramos* case the cane car was parked, whereas here it was being hauled by a locomotive and was moving at the rate of five or six miles an hour. We assume *arguendo* that a parked cane car would attract a child wishing to obtain a piece of cane and that he would not realize the danger if the car began to move while he was still trying to get the cane. But despite the fact that a child might likewise be attracted by the possibility of snatching a piece of cane from a moving car, a

---

[4a] Mr. Justice Todd disagrees with this analysis of the *Ramos* opinion. His view is that the court rested its decision in that case on both the attractive nuisance doctrine and ordinary negligence. He is otherwise in agreement with this opinion.

child as here of sufficient age to be allowed at large who has ordinary intelligence may reasonably be expected to appreciate the risk involved in attempting to snatch a piece of cane from a moving vehicle.

Once we accept the premise that an ordinary child would realize the danger involved in attempting to extract a piece of cane from a moving car, the doctrine of attractive nuisance cannot be invoked for his benefit when he is injured in such an attempt. Under those circumstances, the requirements laid down in clauses (a) and (c) of § 339 for an attractive nuisance are lacking. As the Restatement points out in commenting on clause (a) at p. 922, this doctrine "does not extend to those conditions the existence of which is obvious even to children and the risk of which is fully realized by them. In the same way, the Restatement, commenting on clause (c), says the following:

". . . This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein but none the less chooses to encounter it out of recklessness or bravado."[5]

The view we have just enunciated is supported by the cases. It is almost unanimously held that moving vehicles, although tempting children to catch rides thereon, do not

---

[5] Eldredge, Tort Liability to Trespassers, 12 Temple Law Q. 32, reprinted in 1 Harper, Readings in Torts, 553, 575, expresses the same thought by asserting that the attractive nuisance doctrine "is intended to protect 'young children' from serious dangers not appreciated by them. It does not create a duty to a reckless child who, fully appreciating a danger, rashly encounters it in a spirit of bravado."

constitute attractive nuisances and therefore their drivers are not required to take the extraordinary precautions contemplated by that doctrine—such as posting a guard to prevent children from stealing a ride—as distinguished from due care in ordinary negligence cases, even if they know of the custom of the children to jump on and off such moving vehicles. *Catlett v. St. Louis I.M. & S. Ry. Co.*, 21 S.W. 1062 (Ark. 1893); *Swartwood's Guardian v. Louisville & N.R. Co.*, 111 S.W. 305 (Ky. 1908); *Underwood v. Western & A.R. Co.*, 31 S.E. 123 (Ga. 1898); *Allred v. Pioneer Truck Co.*, 176 Pac. 455 (Calif. 1918); *Zigman v. Beebe & Runyan Furniture Co.*, 151 N.W. 166 (Neb. 1915); *Routt v. Look*, 191 N.W. 557 (Wis. 1923); *Kaproli v. Central R. of New Jersey*, 143 A. 343 (N.J. 1928); *Louisville & N.R. Co. v. Bennett's Adm'r*, 269 S.W. 547; cases collected in 36 A.L.R. 34, 217-21, 284; Prosser, *supra*, pp. 622, 624. But cf. *Vest v. Chesapeake & O. Ry. Co.*, 187 S.E. 358 (W.Va. 1936), commented on in 46 Yale L.J. 1082. We adopted that rule in this jurisdiction when we refused to apply the attractive nuisance doctrine to make a street car company liable for injuries received by a boy who jumped on one of its street cars to steal a ride, despite the fact that this custom was well known to the defendant. *Bernard v. P.R.Ry.Lt. & P. Co.*, 60 P.R.R. 213.[6]

The short of it is that in view of the requirement of clause (c) of § 339 of the Restatement that for an attractive nuisance to exist the child should not realize the risk, involved in meddling with the object in question, a moving

---

[6] A good statement of this rule is found in *Wilson v. Atchison, T. & S. F. Ry. Co.*, 71 Pac. 282, 283 (Kans. 1903): ". . . the peril of jumping upon and from moving trains is so well understood, and the task of keeping boys from stealing rides hopping upon cars of trains slowly moving through towns or railroad yards is so impracticable and burdensome, as to make the rule invoked [attractive nuisance] inapplicable. To guard trains so as to keep boys entirely away from them would require a host of employees, and fix a standard of responsibility which has never received countenance in this state. Such a standard of duty and responsibility cannot be invented and applied by the court without legislation . . ." (Matter in brackets ours).

vehicle is not an attractive nuisance precisely because the element of motion is generally conceded to impart to such vehicles a danger which is obvious to children even of tenderest years. And the duty to look out for the safety of a trespassing child ends where the child's capacity to understand and avoid the danger begins.

■ In addition, as we have already made clear in the *Ramos* case, the requirement of clause (*d*) is not fulfilled here: the social utility of permitting vehicles to move freely far outweighs the occasional risk to a child who attempts to board or otherwise interfere with a moving vehicle. To require, as the plaintiff suggests, that men be stationed at either side of the tracks whenever moving cane cars slow down to five miles an hour in order to prevent children from stealing cane or a ride would be to require an excessive standard of care which no court has imposed on a defendant in order to protect children intent on taking a risk which even a child of ordinary intelligence should realize is dangerous. Indeed, to insure absolute protection to children who might be attracted to moving vehicles would require the even greater precaution of guards on the front and rear of every vehicle. But to call the failure to post such guards on a moving vehicle negligence and thereby to make car owners liable for accidents which occasionaly result when children are not prevented from boarding or otherwise tampering with moving vehicles would be for us to say that it is more important that no child shall ever be hurt than for the community to have the benefit of modern transportation. We are unable to take such a step backward. We have adverted on another occasion to the possibility that the Legislature may some day find it advisable as a form of social insurance to provide for compensation without reference to fault. *Matos* v. *Pabón,* 63 P.R.R. 855, 865. But until the coming of that day under the present rule of liability only in the event of negligence, we cannot saddle the owner of

a vehicle with a burden which in practical effect would nullify his right to use the vehicle in a reasonable manner.[7]

We are aware that the instant case is not on all fours with the typical case in which the child clearly knows the risk he is taking in stealing a ride on a rapidly moving vehicle engaged in urban transportation. *Bernard* v. *P.R. Ry. Lt. & P. Co., supra.* Here the cane cars were going up-grade and were comparatively slow moving; they were flimsy and easy to reach; they were travelling through a rural area; and the child was only reaching for a piece of cane, not trying to hang on to steal a ride. We recognize that under these circumstances a child would not perceive the danger inherent in his conduct quite so readily as the city urchin stealing a street car or train ride. But this is a question of degree. We are prepared to agree that the *Bernard* and similar cases involved risks which were greater and more patent than those taken by the child here. However, we are constrained to hold that, although in lesser degree, the child in this case nevertheless knew or should have reasonably anticipated the risk he ran, § 339, clause (c) of the Restatement; and that here as in those cases the social utility of modern transportation outweighs the desirability of extreme precautions which would hamstring transportation, clause (d).[8]

It remains only to examine certain of our own cases. In *Álvarez* v. *Santa Isabel Sugar Co.,* 37 P.R.R. 100, we held

---

[7] Lest we be misunderstood, we make it clear that in holding that an ordinary moving vehicle is not to be classified as an attractive nuisance, we are not to be understood as also holding that a piece of moving machinery, which is particularly alluring and dangerous to children, is likewise not governed by the attractive nuisance doctrine. See *Berg* v. *B. B. Fuel Co.,* 142 N. W. 321 (Minn. 1913).

[8] The testimony was conflicting as to whether children customarily snatched cane from the moving cars of the defendant to chew it for the sugar juice it contained. And the lower court made no finding resolving this conflict. However, we assume that such episodes took place frequently and that the defendant should therefore have reasonably anticipated that it would occur here. Nevertheless, for the reasons already given herein, the defendant was warranted, just as in the *Bernard* case, in not taking the affirmative precautions which would be required if the attractive nuisance doctrine applied.

that moving cars loaded with sugar cane and crossing a public highway at a place where there is considerable traffic and a thickly settled neighborhood is not an attractive nuisance to children. It is true that apparently there were no allegations in the complaint (1) that the purpose for which the child was attempting to board the car was to obtain a piece of cane and (2) that the defendant knew or should have known children customarily boarded its cars while they were in motion. But the sweeping terms of our opinion, affirming a judgment for a defendant which was granted on demurrer, make it seem reasonably clear that this court, in view of the considerations expressed herein, was not disposed to characterize a moving car loaded with cane as an attractive nuisance.

The plaintiff relies on *Vega* v. *American R.R. Co. of P.R.*, *supra*. But as we have seen, just as in the *Ramos* case, the *Vega* case puts aside the attractive nuisance doctrine and rests the judgment for the plaintiff on the theory that the defendant was negligent in operating a railroad motor car backward without a lookout to warn the driver of the presence of any person on the track. There is therefore nothing in that case contrary to our views herein. In the same way, *Figueroa* v. *American Railroad Co. of P.R.*, *supra*, *Hernández* v. *Acosta*, 64 P.R.R. 166, and *Ortiz* v. *American Railroad Co. of P.R.*, *supra*, were decided on the issue of ordinary negligence. The theory of attractive nuisance played no part in those decisions and is not discussed in the opinions. While it is true that we relied, in deciding the *Hernández* case, on the familiar rule that the standard of conduct to which a child should conform is that to be expected from a child of like age, intelligence and experience, that concept is unrelated to the attractive nuisance doctrine.

The judgment of the district court will be affirmed.