WAYNE HOGER v. MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY AND ANOTHER. HENRY SHANEDLING, APPELLANT.[1]

December 2, 1938.

No. 31,753.

[1]Reported in 282 N. W. 484.

*Maugridge S. Robb,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre* and *Frank Janes,* for respondent.

LORING, JUSTICE.

In a suit to recover for an injury caused by the breaking of a porcelain faucet handle in the bathroom of an apartment rented to plaintiff and his mother by the defendant Shanedling, the plaintiff had a verdict and the defendant Shanedling appealed from an order denying his blended motion for judgment or a new trial, the corporate defendant having obtained a directed verdict.

Plaintiff and his mother jointly rented a five-room-and-bath apartment from month to month at a rental of $22 per month from the defendant Shanedling on September 1, 1935. The contract was oral, and there was no covenant by the landlord to repair the premises or to keep them in repair. At the time that the plaintiff and his mother commenced the occupancy of the premises the plumbing fixtures were functioning properly. In two or three weeks a leak developed in the hot-water faucet in the bathroom, and upon complaint the landlord directed Carl, the janitor, to fix it. This happened two or three times more during the following year, and on the 14th of September, 1936, the janitor again undertook to fix the leak after complaint had been made. Plaintiff testified that when the janitor finished he told plaintiff and his mother that he had done the best he could and, "If it was still dripping a little bit * * * all you have to do is to push on it hard and it will stop, and he showed us how it was done and it stopped." At about two o'clock on the following day plaintiff was using the lavatory and had occasion to close the hot-water faucet and in doing so applied so much force to the porcelain handle that it broke in his right hand and was forced deeply into and almost through the palm. In his direct examination plaintiff said that he turned the faucet handle as hard as he could and then, when he was asked, "And had he told you to do that before?" answered, "Yes." But later in his cross-examination, in response to the question, "What did Carl tell you to do?" he

answered, "To shut it off tight," which was in effect a reiteration of his first statement on direct examination.

It is the contention of the plaintiff that the porcelain faucet handle was defective and that the promise to repair the leak included the handle, whose defective character should have been ascertained by the landlord. It is the contention of the defendant that there is no evidence of a defect in the porcelain handle or of negligence on the part of the defendant. The janitor did not see any cracks in the handle; neither did the plaintiff nor his mother, and each of them used the lavatory two or three times a day during the more than a year that they occupied the apartment prior to the injury. The only evidence of a crack in the handle was given by a young man named Schoeben, who used the lavatory in shaving himself on the fourth day of July previous to the injury. He noticed no defect in the handle until he was cleaning up the lavatory after he had shaved, and then he thought he saw a couple of hairs on the handle. He could not wipe them off and so he concluded that they were hair-line cracks, but of course he could not tell by observation whether they were any deeper than the surface finish on the porcelain. In his testimony he did not undertake to say that the break in the handle occurred in the place where he saw the cracks. There are still two lines on the surface of the unbroken part of the handle, and these would be visible to a person standing in front of the lavatory when the handle was in a closed position. So there is no evidence before us that the handle broke at the place where this witness saw the lines. Nor is there any testimony in the case that porcelain handles are dangerous or that the hair-line cracks which he saw would indicate to a person having knowledge of such matters that the handle was unsafe to use or that a man of ordinary prudence would have replaced the handle to avoid possible injury to anyone. The porcelain handle was in use daily for over two months after Schoeben noticed the hair-like lines upon it. It withstood the pressure which Carl, the janitor, put upon it and which was sufficient to close the valve on the day previous. It is our opinion that no man of ordinary prudence would anticipate injury to anyone

from the appearance of the faucet as Schoeben described it. These reinforced porcelain faucet handles are in common use, and while they are more fragile than a metal handle, they seem to have sufficient strength to resist the pressure used to close the valves; and while in this case there may have been hair-like lines or cracks upon the handle it had withstood long usage upon a valve that evidently required considerable pressure to close. It withstood the test placed upon it by the janitor in closing it the day before and evidently during the next 24 hours; and while any of these porcelain handles may withstand the pressure necessary to close the valves, this one was subjected to extraordinary pressure by the plaintiff because he says that he pushed the handle as hard as he could. It is significant that he used so much pressure that when the handle broke the porcelain was driven almost through his hand. "The care taken by people generally to prevent injury from articles in common use is a proper guide for the courts in determining what constitutes due care in respect to such articles." Dahl v. Valley Dredging Co. 125 Minn. 90, 95, 145 N. W. 796, 798, 52 L.R.A. (N.S.) 1173, and the question here is whether a man of ordinary prudence would anticipate injury to anyone from the reasonable use of the faucet handle even if it was in the condition in which Schoeben said that he saw it. It is significant that Schoeben was not so impressed with the possible defects in the handle that he mentioned it at the time that he claims he saw the hair-like lines which he said indicated cracks in the handle. He saw this about ten weeks before the accident and never mentioned it until after the accident. As said in Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 97, 69 N. W. 640, 641:

"If a person had no reasonable ground to anticipate that a particular act would or might result in any injury to anybody, then, of course, the act would not be negligent at all."

The order of the trial court is reversed with directions to enter judgment for defendant Shanedling notwithstanding the verdict.

JULIUS J. OLSON, JUSTICE (dissenting).

The scope of the agreement to repair presented purely a fact issue. Reasonable minds could reach different conclusions as to

whether the agreement covered the faucet in all of its parts or was restricted to the replacement of washers. Counsel for defendant evidently realized this situation because, at his request, this special interrogatory was submitted to the jury: "Did defendant Henry Shanedling assume the responsibility to repair the faucet and all the parts thereof, including the porcelain handle known as plaintiff's exhibit A?" This was answered by the jury in the affirmative.

This faucet had been leaking, fixed again and again, but "all the time, no sooner just fixed than it would start to leak again." It "gave a lot of trouble," and defendant's handy man "just could not seem to get it to stop leaking for more than a few days at a time." On Friday, September 11, the faucet was again leaking, and so defendant's handy man, not a plumber, worked on it but said he did not have enough time to finish the job. He came back Monday, the 14th. When he had finished the job he said, "There—it drips a little now, but see—push on it hard—like that—and it will stop." This demonstration was furnished in such a way as to lead plaintiff to believe that it was necessary to use considerable force to stop the drip. His testimony is that on the following day, "I finished washing my hands and I wanted to shut the faucet off and when I turned it like Carl [defendant's handy man] told me to do it broke in the palm of my hand." To me it seems clear that the demonstration on the part of Carl was something the jury had a right to consider in determining whether plaintiff used such excessive force as to go beyond the instructions and demonstrations made by Carl. The jury saw and heard defendant's workman as well as plaintiff. It might find from their appearance as to whether their difference in physical strength justified plaintiff in pushing "on it hard," as instructed by Carl, was the same as or greater than plaintiff's pushing it "as hard as he could." Carl's illustration of what was to be done perhaps as much as the verbal instructions going with it might well have afforded the jury the basis upon which to find negligence, contributory negligence, or want of either. Both issues were duly submitted, and to my mind the record sustains the jury's findings.

"The rule in this jurisdiction is, where a landlord agrees to repair the leased premises, and his negligence in making repairs results in an unsafe condition of the premises, he is liable for injuries caused thereby to persons lawfully upon the premises who are not guilty of contributory negligence. Barron v. Liedloff, 95 Minn. 474, 104 N. W. 289. In that case the landlord had agreed to make certain specific repairs and to put the premises in first-class condition. He undertook to do so, but was negligent in failing to remove a rotten board. If the lessor agreed to repair the railing, and did it in such manner that it was apparently safe, then the lessee had a right to assume that it was safe, and the landlord is liable, if he failed to exercise ordinary care in making the repairs." Good v. Von Hemert, 114 Minn. 393, 394, 131 N. W. 466. The following cases, too, are helpful: Polackoff v. Henry Sonn & Co. Inc. 240 App. Div. 959, 268 N. Y. S. 879, affirmed 264 N. Y. 702, 191 N. E. 634 (much similar as to facts to present case); Richmond v. Standard Elkhorn Coal Co. 222 Ky. 150, 300 S. W. 359, 58 A. L. R. 1423.

Where, as here, the landlord undertakes to repair the leased premises, and does so negligently, thereby causing injury, he is liable for his tort. Such liability follows, not from duty to repair, but because he does the repair job negligently and thereby creates a risk of harm. Gill v. Middleton, 105 Mass. 477, 7 Am. R. 548; Gregor v. Cady, 82 Me. 131, 19 A. 108, 17 A. S. R. 466; Rowan v. Amoskeag Mfg. Co. 79 N. H. 409, 109 A. 561; Marks v. Nambil Realty Co. Inc. 245 N. Y. 256, 157 N. E. 129; Rehder v. Miller, 35 Pa. Sup. 344; Zimmerman v. Homer B. & L. Assn. 111 Pa. Sup. 345, 170 A. 703; Tarnogurski v. Rzepski, 252 Pa. 507, 97 A. 697; Smith v. Tucker, 151 Tenn. 347, 270 N. W. 66, 41 A. L. R. 830.

GALLAGHER, CHIEF JUSTICE (dissenting).

I agree with the views expressed by Mr. Justice Olson.