### LINUS FONTAINE v. THEODORE JOHNSON AND ANOTHER.[1]

December 22, 1939.

No. 32,201.

[1]Reported in 289 N. W. 68.

*Sexton, Mordaunt, Kennedy & Carroll* and *E. D. McLean,* for appellants.

*Stacker & Stacker* and *Cecil Magid,* for respondent.

JULIUS J. OLSON, JUSTICE.

Defendants appeal from an order denying their blended motion for judgment notwithstanding or a new trial.

The jury could find the following facts: On October 24, 1937, plaintiff and wife called at defendants' home to view an apartment they had for rent. The visit occurred toward evening so darkness prevented a thorough inspection. Defendants' request for a nominal deposit to hold the apartment until the next day was complied with. Plaintiff and his family came there at the appointed time and proceeded to take possession. Plaintiff's wife then went to see defendant Mrs. Johnson for the purpose of paying the rent. She complained of various things needing attention by way of washing, cleaning, and minor items of repair, amongst others that: "The handle was off of the oven door on the stove, and the bottom of the davenport was broken out and laying loose. * * * I told her about different things that were broke, including the faucet." Mrs. Johnson promptly and obligingly promised to take care of these matters but nothing came of it. So, a day or two later, plaintiff's wife again went to Mrs. Johnson and sought some action in compliance with her promise. Mrs. Johnson said that as to cleaning and washing "all the tenants left it [the apartment] so dirty" that it was up "to the next one to clean it up." Mrs. Fontaine later did so. During the same conversation the defect in the porcelain faucet was again brought

up as it "was continually leaking * * * and that there was a kind of a crack in it." Remedial measures to correct this situation were again promised. Nothing came of it. On the evening of October 29 the faucet was noisy and water was dripping. Plaintiff sought to shut it off and in doing so the cracked porcelain handle broke in the palm of his hand causing a flesh wound requiring medical treatment and care. To recover damages for these injuries, the present action was brought, resulting in a verdict for plaintiff. There is no complaint about the amount of the recovery nor is there any assignment of error directed against any of the proceedings had. The only assignments here involved go to the refusal of the court to instruct the jury to return a verdict for defendants; for refusing to grant judgment notwithstanding; and that the verdict is not justified by the evidence and is contrary to law.

■ In the recent case of Mullany v. Firemen's Ins. Co. 206 Minn. 29, 32, 33, 287 N. W. 118, 120, we held that:

"The assignment that the court erred in denying a directed verdict raises only the question of the sufficiency of the evidence to sustain the verdict, but not any other question. [Citing authorities.] The assignments that the court erred in refusing to order judgment *non obstante* or a new trial also raise only the question of the sufficiency of the evidence." In that case as in this, where "the assignments of error do not present for review the instructions given below, the rules stated in the charge become the law of the case by which the sufficiency of the evidence to sustain the verdict is determined."

■ Defendants' claims are thus summarized:

"(1) There was no duty upon the defendants to repair the faucet in question either by reason of a condition in the oral lease or by reason of any enforcible subsequent promise, and in the absence of a duty to repair there can be no liability for failure to repair.

"(2) The evidence does not disclose such a condition of the faucet handle as to indicate that a man of ordinary prudence would have anticipated injury from its use."

Assume the validity of the quoted claims, yet to make them effective there must first be found facts upon which they may be based. There was a promise made when plaintiff's rent money was paid that named defects would be corrected. That promise was subsequently renewed. For what purpose? Obviously because the owners wanted rent money for their premises. This was an oral lease from month to month, the rental $37.50. So there cannot be said to be lack of consideration from plaintiff to defendants. Proof that defendants were accustomed to put apartments in good repair before leasing them is furnished by Mrs. Johnson, who testified: "When anyone moves out we always look over everything. * * * Well, whenever they [tenants] report that there is any faucets leaking, or if we see any of them that are leaking, new ones are put in." And this is to their own advantage because, while "the loss of water is not so much * * * if you let the faucet drip it ruins the faucet," in which event a "new faucet" is required involving expense.

Plaintiff called on Mrs. Johnson shortly after the accident, at which time "she told me she had insurance and was sorry it happened but not to worry about the expense as the insurance company would take care of it."

Mr. Fontaine testified that before the accident occurred he had informed Mrs. Johnson that the faucet was defective and likely to cause harm.

We think there were fact issues presented and that the verdict finds reasonable support in the record.

Hoger v. Massachusetts Mut. L. Ins. Co. 204 Minn. 615, 282 N. W. 484, cited and relied upon by defendants, is not out of tune with the conclusion here reached, for the determinative facts there appearing are not at all the same, or even similar, to those here presented.

More in point to the facts we have here, and sustaining our views, is Polackoff v. Henry Sonn & Co. Inc. 264 N. Y. 702, 191 N. E. 634.

Order affirmed.